**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**DAVID D. DENTON,**

                    **Plaintiff,**

**v.**

                                        **Civ. No. 4:16CV32**

**PENNYMAC LOAN SERVICING, LLC**


**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES**

Plaintiff, David D. Denton, has moved the court for an award of costs and attorneys' fees in the amount of $85,644.39 pursuant to the Defendant's Rule 68 Offer of Judgment.

**I.      Introduction**

Mr. Denton filed his lawsuit against Pennymac and consumer reporting agencies (CRAs) pursuant to the Fair Credit Reporting Act (FCRA) on May 2, 2016, after months of frustration in trying to correct the accounting and reporting of his mortgage.  (ECF 1.)  Prior to filing the Complaint, Mr. Denton attempted to have the CRAs and Pennymac correct his consumer report by disputing the reporting directly with Pennymac and also through each of the CRAs.  Despite his bona fide disputes, Pennymac verified the accuracy of its reporting.

After Mr. Denton filed his Complaint, he settled his disputes against the credit reporting agencies soon after their answers were filed.[1]  Plaintiff transmitted a settlement demand to Pennymac, but instead of making a counteroffer, Pennymac proceeded to defend the suit zealously.  The parties engaged in formal discovery, together with extensive meeting and conferring. Early in the case, the Plaintiff served his written discovery and requested deposition

---

[1] The fees and costs requested in this application reflect those attributable to the litigation against Pennymac only and not the CRAs.

dates. The Plaintiff served third-party subpoenas, follow-up written discovery, prepared for and took two depositions, including a combined fact witness/corporate designee, and scheduled and prepared for several more. Despite meeting and conferring, and general cooperation and professional courtesy among the attorneys, the Defendant nonetheless failed to timely and completely answer discovery or to cooperate in the setting of depositions. Plaintiff filed a motion to compel. Due to confidential designations and Plaintiff's personal information, Plaintiff also had to file a notice and motion to seal Pennymac's discovery responses under Local Rule 5 and the Parties' protective order.

The Defendant also served discovery, which responses were not yet due when the Plaintiff accepted the Offer of Judgment, but the Plaintiff had begun to diligently work on responses – including reviewing each request and determining whether and how to object, which ultimately the Plaintiff made the decision not to object.

While the corporate designee's Rule 30(b)(6) deposition was taking place on November 30, 2016, Pennymac served an Offer of Judgment under Rule 68. After the deposition's conclusion, counsel and Mr. Denton had an opportunity to consider the Offer of Judgment, which Mr. Denton ultimately decided to accept. (ECF 41.) The Offer of Judgment specifically contained a provision for the payment by the Defendant of the Plaintiffs' costs and attorneys' fees through the date of the offer, as determined by the court.

**1.      Standard for Awarding Attorneys' Fees**

The Fair Credit Reporting Act provides in pertinent part that a plaintiff may recover "in the case of any successful action to enforce any liability under this section, the costs of the action together with the reasonable attorney's fees as determined by the court."   15 U.S.C. § 1681n(a)(3); 15 U.S.C. § 1681o(a)(2).

2

Because an award of attorneys' fees is mandatory under the federal consumer protection statutes, so long as the plaintiff is successful, fees must be awarded. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n. 5 (1978); *Postow v. OBA Fed. Sav. & Loan Ass*'n, 627 F.2d 1370 (D.C. Cir. 1980). A plaintiff is considered successful if he succeeds on any significant issue in litigation that achieves some of the benefit the party sought in bringing the suit, even if other state and federal claims are not successful. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Postow*, 627 F.2d 1370. Thus, a prevailing plaintiff must obtain at least some relief on the merits of his claim and obtain an enforceable judgment in order to qualify as a successful party. *Hensley*, 461 U.S. at 433; *see also Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Because judgment has been entered against the Defendant pursuant to a Rule 68 Offer of Judgment as to all the issues in this case, the Plaintiff has succeeded on his claims and is entitled to recover reasonable attorneys fees.

### 2.      Attorneys' Fees for Motion for Fees

Plaintiff also incurred a significant amount of fees in drafting this motion for attorneys fees. Shortly after judgment was entered, Defendant's counsel requested the amount of Plaintiff's fees attributable to the case against Pennymac, which Plaintiff provided. Counsel met and conferred regarding the amount of fees with an eye toward compromise, but since the Defendant did not consent to the amount of the requested fee as being reasonable or propose any compromise position, the Plaintiff is required to fully brief the issue for the court to make a decision. The amount of "fees on fees" should be awarded in the amount of $ 4,512.00. *Monster Daddy, LLC v. Monster Cable Prods., Inc*. 483 Fed. App'x 831, 837 (4th Cir. 2012)(broadly construing the plain language of the agreement between the parties to fully compensate the prevailing party, including for costs incurred in a related action.) The Offer of Judgment

attempted to limit the "reasonable fee" to the amount of costs and fees incurred at the time the

offer was made, November 30, 2016.  However, the Plaintiffs are entitled to recover attorneys'

fees that they have incurred in order to seek the court's approval of the reasonable fee.

> It is well-settled that reasonable time and expenses spent preparing a fee petition are compensable. This is so because "the fee application is a necessary part of the award of attorney's fees." As with a fee application for work performed on the merits of the case, however, a fee award for fee preparation work must be reasonable in the circumstances. *See, e.g., Commissioner v. Jean,* 496 U.S. 154, 163 n. 10, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); *Donovan v. CSEA Local Union 1000,* 784 F.2d 98, 106 (2d Cir.1986) ("If the original award is warranted, ... a *reasonable* amount should be granted for time spent in applying for the award.") (emphasis added).

*Am. Canoe Ass'n, Inc. v. U.S. E.P.A.,* 138 F. Supp. 2d 722, 746-47 (E.D. Va. 2001). Ms. Rotkis

incurred an additional 9.5 hours in the process of segregating the Pennymac-only costs and fees,

redacting the invoice, meeting and conferring with opposing counsel in the process of discussing

whether the parties could come to some compromise agreement and, then, hearing nothing,

moving for fees by drafting this motion, memorandum, declaration, and obtaining a supporting

declaration from another experienced consumer protection attorney regarding the reasonableness

of the Plaintiff's counsel's fees.   (Rotkis Decl. ¶ 44; Ex. 1-2).

## II.  Attorney's Fees are to be Calculated Pursuant to the Lodestar Formula.

The United States Supreme Court has explained the calculation for an award of

reasonable attorneys' fees as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also People Who Care v. Rockford Bd. of*

*Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996). Although this decision, and others

cited hereinafter, arose in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. §

4

1988, these criteria are equally applicable here. In fact, the Supreme Court explicitly stated as much in *Hensley:* "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley,* 461 U.S. at 433 n.7. The Supreme Court has further stated that similar language among fee-shifting statutes is "'a strong indication' that they are to be interpreted alike." *Indep. Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754, 758 n.2 (1989) (quoting *Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428 (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." *Student Pub. Interest Research Grp. v. AT&T Bell Labs*., 842 F.2d 1436, 1441 (3d Cir. 1988). This court has, in other cases, previously instructed Plaintiff's counsel to present a fee petition according to *Robinson v. Equifax Info. Sols., LLC.,* in which the Fourth Circuit set forth an analytical framework for determining whether a requested fee is reasonable.   560 F.3d 235, 243-44 (4th Cir. 2009)(there must be satisfactory evidence of prevailing market rates for attorneys' hourly rates). In this case, Plaintiff has provided the declarations of his attorney, Susan M. Rotkis, as well as Dale W. Pittman, an experienced consumer protection attorney who is familiar with the Plaintiff's attorneys and the prevailing market rates.  (Exs. 1-2).

In *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir. 1978), the Fourth Circuit held that, when determining the amount of attorneys' fees to be awarded, a district court must consider the twelve factors specified in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). In *Barber*, the Fourth Circuit held that the following factors were to be considered when calculating attorneys' fees:

    (1) the time and labor expended;
    (2) the novelty and difficulty of the questions raised;
    (3) the skill required to properly perform the legal services rendered;
    (4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;
(6) the attorney's expectations at the outset of the litigation;
(7) the time limitations imposed by the client or circumstances;
(8) the amount in controversy and the results obtained;
(9) the experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and
(12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226; *see also Grissom v. Mills Corp.,* 549 F.3d 315, 321 (4th Cir. 2008). The Court need not address all twelve factors independently because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Freeman v. Potter,* 2006 WL 2631722, at *2 (W.D.Va.2006) (citing *Hensley,* 461 U.S. at 434 n. 9), *accord Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship,* 730 F. Supp. 2d 513, 520 (E.D. Va. 2010), *aff'd sub nom. Signature Flight Support Cor. v. Landow Aviation Ltd. P'ship*, 442 F. App'x 776 (4th Cir. 2011).

Under *Grissom*, where a prevailing party succeeds on only some claims, the court (1) calculates the lodestar which is the product of the "reasonable hourly rate" by the "hours reasonably expended," in light of the *Johnson/Barber* factors; (2) subtracts fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff. *Bradford v. HSBC Mortg. Corp.,* 859 F. Supp. 2d 783, 789 (E.D. Va. 2012) (internal citations omitted). In this case, the *Grissom* analysis does not apply because the Plaintiff was *entirely* successful on all of his claims by obtaining a judgment as to all claims, and therefore no deduction is proper and such basis. *Id.* In *Bradford*, the court relied on *Perdue v. Kenny A.,* 559 U.S. 542 (2010), where the Supreme Court emphasized that the lodestar, once calculated in a particular case, is presumptively reasonable and thus may be adjusted only "in those *rare circumstances* in which

the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 1673 (emphasis in original). This is not a rare case requiring adjustment. The *Robinson v. Equifax* factors discussed below are based on the Rotkis Declaration (Ex. 1) and billing records, the Pittman Declaration (Ex. 2), and the 2013 Miller Declaration (Ex. 3), which are all attached as exhibits.

### 1. *The time and labor required*

The FCRA has a mechanism by which furnishers such as Pennymac have the opportunity to investigate and correct a consumer's dispute prior to any liability attaching or cause of action arising. 15 U.S.C. § 1681s-2(a) & (b). Prior to filing this lawsuit, Mr. Denton followed the procedure by which he disputed the accuracy of the Pennymac reporting directly with Pennymac and also through the CRAs. When this was unsuccessful, Mr. Denton filed the lawsuit which Pennymac has vigorously defended since it was served with the summons. Plaintiff attempted an early settlement in accordance with Rule 26(f), but Pennymac did not engage in the give and take process of settlement negotiation and left the Plaintiff's demand unanswered for months while litigation was underway. The Plaintiff served extensive written discovery, to which the Defendant objected to nearly every single request, failed to ever answer many requests, failed to move for a protective order, and stonewalled.[2] Defendant refused to cooperate in the setting of depositions and providing information about witnesses. Defendant failed to identify witnesses and evidence in its Rule 26(a)(1) mandatory disclosures. Each of these discovery tactics multiplied the amount of time Plaintiff's counsel was required to spend on the most basic discovery, meeting and conferring, reviewing what was and what wasn't produced, and whether the production was responsive to the Plaintiff's requests. *See, Bralley v. Carey*, Civ.

---

[2] This history of the discovery abuse in this case is chronicled fully in the Plaintiff's Memorandum in Support of Motion to Compel (ECF 30) and the Rotkis Declaration.

3:10CV138, 2011 WL 4703098, at * 3 (E.D. Va. 2011)(explaining that it was by the defendant's own conduct that the attorneys fees were inflated.").[3] Plaintiffs did not expend more time than necessary on attempting to resolve the matter, or in briefing and pursuing the motion to compel, or in conducting discovery.

All of counsel's activities that were substantial are documented in the Rotkis Declaration and supporting billing records. (Ex. 1). This case is actually typical and reflects the reasonable amount of time that Plaintiff's counsel generally devotes to an FCRA case at this stage of litigation and before dispositive motions are filed and argued.

### 2. *The novelty and difficulty of the questions*

The questions presented by this case are not unusually novel or difficult in this court or to Plaintiff's counsel, but they do require legal competence and skill to bring the issues forward for resolution by the court. Plaintiff's counsel has prosecuted numerous FCRA cases in this court where a mortgage servicer failed to accurately report a consumer's mortgage payments. However, this fact should not result in a downward adjustment of the lodestar amount when the amount sought is the straight lodestar actually incurred and when the amount sought is demonstrably reasonable, such as in this case. Likewise, filing a motion for fees based on a prevailing-party fee-shifting provision in the governing statute requires the skill and time of a lawyer to bring forward for resolution by researching and drafting a proper motion and memorandum, as well as obtaining a supporting declaration. Even if the case is entirely straightforward, the lodestar amount may not be reduced. *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). The novelty and difficulty of the issues therefore provides no basis to adjust the lodestar downward or upward. Instead, Pennymac has actually benefited from counsel's

---

[3] *Bralley v. Carey* involved breach of settlement, entry of judgment, post-judgment discovery, and the motion for fees.

familiarity with this field and area of law as there was only a reasonable amount of time required in litigating this case thus far.

### 3. *The skill requisite to perform the legal services properly*

Plaintiffs' counsel knows of only a few attorneys nationally who are willing *and able* to litigate the underlying claims in this case. Most attorneys do not understand or claim spot the legal issues involved in such cases, and for decades at least, members of the Virginia Bar generally reject clients' requests for representation in consumer protection cases such as this one – with a complicated history.  This is also true nationally – a proper market for such expertise. In fact, less than a handful of attorneys have taken an FCRA case to a jury trial in Virginia, with Leonard Bennett and Susan M. Rotkis of Consumer Litigation Associates, being among them. This is also true nationally. Over the last two decades, the Mr. Bennett and the attorneys of Consumer Litigation Associates have tried more FCRA jury cases than any other attorney in the nation. And, in total, the fraternity of attorneys who have taken a FCRA case all the way to trial is less than a dozen. Ms. Rotkis is junior to Mr. Bennett and her hourly rate is substantially less, and she has performed most of the work in this case, thus saving the Defendant from incurring even more expense associated with work done by the firm's most senior attorney.

Additionally, the active and successful litigation of civil claims in federal court, particularly in the Eastern District of Virginia's "rocket docket," requires a higher skill level than litigation in a less demanding forum. Plaintiff's counsel has the skill and knowledge to perform these services properly.  The attorneys of Consumer Litigation Associates, P.C. are amongst the most experienced attorneys in this District with a caseload for the last decade to rival any large law firm. But Plaintiff's counsel's skill is only one factor here.  This case was defended by arguably one of the top defense firms in the Commonwealth and the nation, ReedSmith.

ReedSmith is an international law firm with more than 1,700 attorneys.  They have 15 offices throughout the United States, seven offices in Europe and the Middle East, and five offices in Asia.   www.reedsmith.com, last visited 12/12/2016.   Pennymac is represented by Justin Sizemore, a graduate of the University of Virginia law school, who is a skilled litigator with more than 12 years of experience who has defended 46 federal cases, many of which are consumer protection cases.  In addition to his own legal acumen, he has the immense resources of the ReedSmith firm behind him and Pennymac in defending this action.

Given the high level of legal expertise representing Pennymac, Plaintiff's counsel had to be skilled to be successful.

### 4.    The preclusion of other employment

The time spent on this case against the Defendant was not, and could not be, spent at the same time as on litigating other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent Plaintiffs in a contingency or fee shifting case in federal court. The time Plaintiff's counsel expended on his behalf was time that would have been spent on other matters had this case not been filed or litigated.

It is appropriate in considering what a reasonable fee would be to consider that whenever an attorney takes a case, she does so to the exclusion of accepting other work. Plaintiff's counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion, which was substantial. Thus, some consumers did not receive the same help provided to this Plaintiff. Counsel does not have the resources of a large firm and must review, select and turn down cases accordingly. It is clear that the time spent on this case would have been expended on other matters, and therefore this factor provides no basis for any adjustment of the lodestar.

Consumer Litigation Associates recognize how fortunate they are in obtaining the position they have reached in the consumer protection litigation field and, more generally, in the business of law. But for these attorneys, the opportunity costs are objectively measured. Deserved or not, the effective hourly rate for a successful contingency practice like those of Plaintiffs' counsel is greater than the conventional hourly rate charged by a defense firm and greater than the rates submitted herein.

**5.**     ***The customary fee for like work in the community***

Plaintiff's counsel are among the most experienced consumer protection attorneys in the Fourth Circuit and the country. Its founding member, Leonard Bennett, has been practicing law since 1994. He is on the Partners' Counsel of the National Consumer Law Center, one of the leading consumer law groups in the nation. He is on the board of the Virginia Poverty Law Center, is a member of the Public Justice Foundation, and previously served on the National Association of Consumer Advocate's board of directors. He has testified regarding consumer law issues before the United States House Financial Services Committee on multiple occasions and has also served on the Federal Commission Round Table regarding consumer law matters and Governor Kaine's Virginia *Protecting Consumer Privacy* Working Group. He has also been awarded numerous honors, including selection in the Law Dragon's Top 500 Plaintiff's Attorneys in the Nation, Law Dragon's Top 3,000 Attorneys in the Nation, Virginia's Leaders in the Law, and is a multi-year Virginia Super Lawyer. Mr. Bennett is also one of the authors of the National Consumer Law Center's treatise on the FCRA, which is considered the statute's leading authority, and teaches several consumer law CLE courses each year. Mr. Bennett's

hourly rate is $625.00.[4] Declaration of Susan M. Rotkis (Rotkis Decl., Ex. 2.)   Although Mr. Bennett has billed less only a small fraction of the hours incurred in this case, he at all times has been included in the correspondence, pleadings, strategy and supervision in this case.

Susan M. Rotkis has been practicing law since 1996. She is a member of the National Association of Consumer Advocates, a member of the Public Justice Foundation, Virginia Trial Laywers Association and American Association for Justice. She has testified regarding consumer law and the changes to Rule 26 before the Federal Rules Advisory Committee. She has been selected as a Virginia Super Lawyer and an Influential Woman of Virginia by Virginia Lawyers Weekly. She is currently serving a gubernatorial appointment as a Commissioner on the Hampton Roads Sanitation District Commission.  She has taught continuing legal education at local and national consumer protection conferences.  She is admitted to the United States Supreme Court, the Supreme Courts of Virginia and Arizona, the United States District Courts for the Eastern District of Virginia, Western District of Virginia, District of Columbia, and the District of Arizona.  She has represented consumers in over 300 federal cases.  Ms. Rotkis' hourly rate was last specifically approved by a court in 2014, based on her 2013 rate when it was $425.00 per hour. (Rotkis Decl. ¶ 11; Miller Decl. ¶ 30.) Ms. Rotkis' hourly rate was then adjusted to be $450.00 per hour, where it remained until September of 2016.  In September of 2016, Ms. Rotkis' hourly rate was upwardly adjusted to $475.00 per hour.   She is still affiliated with Consumer Litigation Associates, P.C., but has recently relocated to Arizona and opened an

---

[4] For many years, Mr. Bennett's rate has been set by the firm and approved by courts at $575.00 per hour.  When the firm migrated to its current billing software over a year ago, the firm considered attorneys hourly rates and established an increase in his rate to be $625.00 per hour. Recently, Mr. Bennett's rate is currently $675.00 per hour to more accurately reflect his skill and the prevailing market rates.

office of Consumer Litigation Associates West, P.L.L.C.  Ms. Rotkis has performed nearly all of the legal tasks in this case, preventing unnecessary duplication or multiplication of fees.[5]

Plaintiff's Counsel's rates are based on the Virginia rates for similar federal litigation work. These rates are reasonable and well within the prevailing market rate for similarly-experienced attorneys in this District as reflected by the attached declarations. Declaration of W. Pittman (Pittman Decl., Ex. 3); *see also* Declaration of Geoffrey P. Miller (Miller Decl. Ex. 4) (Mr. Miller was hired by Consumer Litigation Associates in 2013 to opine on the reasonableness of its fees in *Berry v. LexisNexis Risk & Analytics Group, Inc.*, 3:14cv754-JRS-MHL, 2014 U.S. Dist. Lexis 124415 (E.D. Va. 2014), *affirmed*, 807 F. 3d 600 (4th Cir. 2015), a case in which CLA's hourly rates were approved, though not explicitly, by Judge Spencer. The Fourth Circuit affirmed, finding that the trial court had enough evidence to rely upon in approving the award of attorneys fees.  Mr. Pittman, a veteran in this Court for over 40 years, agreed to provide his opinion regarding the requested hourly rates of Plaintiff's counsel, which he believes are fair and reasonable. As reflected by his declaration, Mr. Pittman is certainly qualified as an expert as it relates to the prevailing market rates in the Eastern District of Virginia. He has filed more than 375 cases in the Eastern District of Virginia, including this Division.

In addition to these declarations, there are several cases in this district and division that have held hourly rates similar to or higher than Plaintiff's Counsel's rates are reasonable. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) (J. O'Grady approving lodestar cross-check of percentage fee award for partner-level attorneys with hourly rates ranging from $440-$825 per hour); *Bralley*, 2011 WL 4703098(finding the hourly rate of $425 for plaintiff's

---

[5] Ms. Rotkis has been assisted in a very meaningful way by Vicki L. Ward, a senior paralegal with 27 years of experience, and Dawn Chaffer, a legal assistant with more than 25 years of experience.  The hours for Mrs. Ward and Mrs. Chaffer are not maintained in the billing system, but maintained separately by them.  Mrs. Chaffer's hours have not been added to the lodestar.

lead counsel in small individual FDCPA case in Norfolk was reasonable); *Lux v. Judd*, 868 F. Supp. 2d 519, 531-32 (E.D. Va. 2012) (Hourly rates of $575 for prevailing plaintiff's lead counsel and $400 for plaintiff's local counsel were reasonable in part because the requested rates were comparable to market rates in the community); *McAfee v. Boczar*, 906 F. Supp. 2d 484, 496 (E.D. Va. 2012) (Judge Payne held that rate of $585 per hour for experienced lead counsel, and $365 per hour for a senior associate were reasonable); *Randle v. H&P Capital, Inc.*, 3:09CV608, 2010 WL 2944907, at *8 (E.D. Va. July 21, 2010) ("The record here establishes that the prevailing market rate for lawyers of comparable skill, experience, and reputation performing similar services in the Richmond area falls between $300 and $600 per hour."); *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 730 F. Supp. 2d 513, 527 (E.D. Va. 2010) *aff'd sub nom. Signature Flight Support Cor. v. Landow Aviation Ltd. P'ship*, 442 F. App'x 776 (4th Cir. 2011) (approving hourly rates of $609 per hour as reasonable)[6]; *Smith v. EVB*, 3:09cv554, 2010 U.S. Dist. LEXIS 135562, at *6 (E.D. Va. Dec. 22, 2010) ("average hourly rate for federal litigation attorneys practicing in the Eastern District of Virginia's Richmond Division ranges from $300 per hour to at least $600 per hour."); *SunTrust Mortgage, Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 774 (E.D. Va. 2013) (awarding an hourly rate of $695 per hour as reasonable); *W.A.K. ex rel. Karo v. Wachovia Bank, N.A.*, 3:09CV575-HEH, 2010 WL 3074393, at *4–5 (E.D. Va. Aug. 5, 2010) (finding attorney rates of $595 as reasonable and "consistent with the prevailing rate in the Richmond area.").

---

[6] In *Signature Flight Support Corp.*, an expert declaration was supplied by Robert Angle, a Troutman Sanders partner located in Richmond, Virginia. In it, Mr. Angle described how Troutman Sanders set its attorney billing rates based on PriceWaterhouseCoopers surveys of like-sized firms in 2009, seven years ago. In reviewing the billable rates at that time for Northern Virginia, equity partners with 16-20 years experience billed $559 - $ 647/hour, and associates with 16-20 years experience billed between $508-$612/hour. The Fourth Circuit affirmed.

In addition, in a recent district court opinion in *Dreher v. Experian Info. Sols. LLC.,* 3:11CV624 (E.D.Va. July 26, 2016)(ECF 442), the court reasoned that "[o]ne way to judge the legitimacy of the plaintiff's fees is to look a the defendant's fees."  Plaintiff's counsel was unable to obtain Defendant's counsel's hourly rates.   However, Counsel examined a very recent fee petition filed in September of this year by Hunton & Williams *In re: Alpha Resources Inc. et al.,* 15-33896.  (ECF 3440.) Hunton & Williams is a firm less half the size of Reed Smith, but also with offices throughout the United States, Europe and the Middle East.  www.hunton.com, last visited 12/12/2016. Hunton & Williams and ReedSmith are industry competitors with large offices in Richmond, Virginia, and thus their Richmond attorneys are likely to be compensated in the same range.  For example, Hunton & Williams attorneys Tyler Brown, Kimberly MacLeod and Justin Paget were among the attorneys whose hourly rates were listed in that petition. Mr. Brown's years of experience, expertise in bankruptcy, and skill as a lawyer are reflected in his current hourly rate of $775/hour.  Mr. Brown is a Virginia lawyer with 29 years of experience. Mr. Brown was educated at Washington & Lee and practices in Richmond, Virginia. Ms. MacLeod is listed on the firm's website as a partner in the banking and finance areas.  She is a 1996 graduate of the University of Richmond law school, and her hourly rate is $720/hour. Hunton & Williams is billing $525/hour for another Richmond attorney, Justin Paget, an associate who graduated University of Richmond law school in 2008, and has eight years of experience.  These rates are therefore relevant to determining whether Plaintiff's counsel's rates are reasonable for Richmond, Virginia, for federal litigators of like experience and skill.

All of these sources confirm that the hourly rates sought by Plaintiff's Counsel in this motion are both reasonable and well within the range of the local Virginia market.

6. ***Whether the fee is fixed or contingent***

The Plaintiffs' entitlement to recover a fee at issue in consumer protection cases such as this one, the fee is very often contingent.  In *Johnson*, the Court ruled that the fixed/contingent nature of the fee was important because, "[i]n no event . . . should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to an amount." 488 F.2d at 718. However, this portion of the ruling was expressly rejected by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorneys' fees and to hold otherwise would be inconsistent with the statute and its policy and purpose."). Conversely, the Court ruled that the fee award does not impose a cap on a contingent fee agreement; the attorney can get more from his client if his agreement so provides. *See Venegas v. Mitchell*, 495 U.S. 82, 87–90 (1990). Nor does the contingency factor provide a basis for an upward adjustment of the fee request. *City of Burlington v. Dague*, 505 U.S. 557 (1992). Thus, the current cases hold that the fixed or contingent nature of the fee agreement neither reduces nor enhances the fee award.

**7.** **Time limitations imposed by the client or the circumstances**

The time limitations in this case were imposed by the Plaintiff's need to obtain relief from the inaccurate credit reporting by Pennymac. Plaintiff immediately sought to correct the inaccuracy using the tools at hand – the dispute process.  When that didn't work, counsel filed a Complaint, thus starting the rigorous E.D.Va. litigation clock.  Even in the Eastern District of Virginia, where the Court is committed to a speedy progression of cases through the litigation process, it still takes time to complete a federal lawsuit.  This was one factor that Mr. Denton took into consideration when accepting the Offer of Judgment. This factor provides no basis here for any change in the lodestar amount.

8.      *The amount involved and the results obtained*

"[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman,* 436 F. Supp. 58, 66 (W.D. Tex. 1977) (awarding the Plaintiff the maximum $1,000.00 statutory damages available to him under the Truth in Lending Act). The Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorneys' fees to be awarded in *Yohay v. City of Alexandria Employees Credit Union*, a case involving the FCRA. In rejecting the defendant's claim urging proportionality, the Fourth Circuit stated:

> Proportionality of attorneys' fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorneys' fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay*, 827 F.2d 967, 974 (4th Cir. 1987). In this case, the Plaintiff will recovery $5000.00, inclusive of all damages he could recover. This amount far exceeds the possible amount of statutory damages of between $100 and $1000, and is within the low range of FCRA actual damages cases. The Plaintiff, however, was completely successful in this lawsuit, which was not brought to harass the Defendant but to obtain relief from Pennymac's inaccurate credit reporting.

This factor provides no reason for any downward adjustment of the lodestar, but can provide a basis for the court to find that there is no just reason to adjust the lodestar amount in any way. The Plaintiff was completely successful and obtained relief provided by the statute.[7]

9.      *The experience, reputation and ability of the attorney*

The experience, reputation, and ability of Plaintiff's counsel are reflected in the declarations of Ms. Rotkis, Mr. Pittman and Mr. Miller. Mr. Bennett and Ms. Rotkis have

---

[7] The Defendants have not yet paid the full amount of the judgment to the Plaintiff.

substantial experience with consumer protection actions litigated in federal court and are capable of handling complex consumer litigation. Although in consumer cases generally, their expertise in consumer and complex litigation provides a basis for an upward adjustment of the lodestar amount, in this case it serves as a factor favoring an award of the straight lodestar amount.

### 10.    The undesirability of the case

To counsel's knowledge, there are only a handful of attorneys who practice in this legal market, in federal court and in the area of consumer protection law. The FCRA is a complex statute and advancing the costs required to litigate an inaccuracy case—which often include the deposition of overseas ACDV agents or employees in other states—can be costly and risky, as these cases are often taken on a contingency fee, with no guarantee of payment. Plaintiff's counsel has chosen this niche area of practice, along with several other consumer protection statutes, and devotes a considerable amount of time to consumer protection without any guarantee of payment. Few attorneys are willing to accept these risks and fewer still would help at all if they were unable to count on a full-fee award.

Plaintiff's counsel's willingness to take Mr. Denton's case and others like it, cases which other lawyers choose to decline, provides a sound basis for approval of the lodestar amount.

### 11.    The nature and length of the professional relationship with the client

Plaintiff engaged his counsel to litigate claims against not only Pennymac, but also Experian, Equifax and Trans Union. Plaintiff's counsel were retained particularly for pursuit of this claim in federal court. This factor is in some respects inapplicable or neutral to an attorney whose representation is limited to consumer protection claims, which are not ongoing matters, and thus provides neither a basis to increase or decrease the lodestar amount. However, it is

noteworthy to consider that the relationship began on a contingent basis.

   12.   *Awards in similar cases*

Plaintiff's attorneys' fee request is within the prevailing market range for this type of representation.   In a consumer protection enforcement case *Bralley v. Carey*, where the court approved a fee of $27,296.58 as reasonable for a plaintiff's attempt to enforce a judgment in a relatively small FDCPA action.   2011 WL 4703098.   Normally, a fee petition for this representation would be based on the fee-shifting statute and somewhat easier to compare to awards in other cases. For example, after obtaining a $90,000 judgment, *Johnson v. MBNA America Bank, N.A*, Civ. No. 3:05-cv-731 (E.D.Va.), a case with a one-day jury trial, the attorneys' fees paid were $155,000.  The fee paid in *Saunders v. B.B. & T. of Virginia*, Civ. No 3:05-cv-731 (E.D.Va.), where Troutman Sanders represented the Defendant in that case, the attorneys' fee awarded was $ 250,000.[8]  And in another FCRA case, the Defendant paid $180,000 in attorneys' fees after a two-day jury trial.  *Mullins v. Equifax*. Civ. No. 3:05-cv-888 (E.D.Va.).  In this case, there was trial, but a judgment that contained an offer to pay the reasonable attorneys' fees to be determined by the court.  Even so, all of these cases were litigated over ten years ago rather than at contemporary rates.

In addition to *Bralley*, one other example of a comparable case related to a fee application (based on a breach of contract) is *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*. 730 F. Supp. 2d at 520.  Although the fee in that case was based on hourly rates in Northern Virginia in 2009, the court there found that the fee applicants had met their burden of demonstrating the reasonableness of their hourly rates as well as the time expended on *successful claims*.  *Id.* (reducing the fee requested based on the percentage of time reasonably expended on

---

[8] Both Johnson and Saunders also included a post-trial appeal and the trial itself.  But they also litigated at a much earlier stage of Plaintiff's counsel's career.

unsuccessful claims.)  In this case, the total amount of costs and fee requested is $ 85,644.39, which was almost entirely occasioned by one attorney's time spent in good faith – all after attempting to resolve without further litigation.  (Rotkis Decl. ¶¶ 35, 45).

## CONCLUSION

Accordingly, Plaintiff respectfully requests the Court to grant his Motion for Attorneys' Fees and costs in the amount of $ 85,644.39 at this time.


Respectfully submitted,


_____/s/_____
Susan M. Rotkis, VSB 40693
CONSUMER LITIGATION  ASSOCS., P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
E-mail:  srotkis@clalegal.com
*Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on this 14 day of December 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Justin Michael Sizemore
Reed Smith, LLP
901 E. Byrd Street
Suite 1700
Richmond, VA  23219-4069
Email:  jsizemore@reedsmith.com

_____/s/_____

Susan M. Rotkis, VSB 40693
CONSUMER LITIGATION  ASSOCS., P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
E-mail:  srotkis@clalegal.com
*Counsel for Plaintiff*