UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DAVID D. DENTON,

       Plaintiff,

v.                              Civil Action No. 4:16cv32

PENNYMAC LOAN SERVICES, LLC.,

       Defendant.

## OPINION AND ORDER

This matter is before the Court on a motion seeking attorney's fees[1] and costs, ECF No. 43, and a motion for leave to file supplemental authority, ECF No. 56, filed by Plaintiff David D. Denton ("Plaintiff"). Plaintiff's motion for attorney's fees and costs is filed pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681o(a)(2) and 1681n(a)(3), based upon Plaintiff's acceptance of Defendant's Rule 68 Offer of Judgment. For the reasons discussed below, Plaintiff's motion seeking attorney's fees and costs is **GRANTED**, but the amount of

---

[1] The Court notes that the Fair Credit Reporting Act uses the phrase "attorney's fees," 15 U.S.C. § 1681o(a)(2), and thus the Court will use this statutory terminology throughout this Opinion. See Marek v. Chesny, 473 U.S. 1, 8 (1985) ("attorney's fees"). However, the Court is aware that multiple other terms have been used to describe attorney's fees. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) ("attorney's fee"); Grissom v. The Mills Corp., 549 F.3d 313, 318 (4th Cir. 2008) ("attorney fees"); Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978) ("attorneys' fees"). Even Black's Law Dictionary has listed this phrase differently in different editions. Compare, Black's Law Dictionary 148 (9th ed. 2004) (giving a definition for "attorney's fees"), with Black's Law Dictionary (10th ed. 2014) (giving a definition for "attorney's fee").

such award is less than Plaintiff requested, and Plaintiff's motion for leave to file supplemental authority is **DISMISSED as MOOT**.

## I. Factual and Procedural Background

On May 2, 2016, Plaintiff filed a complaint against Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC ("Credit Reporting Agencies"), and PennyMac Loan Services, LLC ("Defendant"),[2] alleging a violation of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. Compl. ¶ 1, ECF No. 1. According to Plaintiff, while acting as his mortgage servicer, Defendant incorrectly reported to the Credit Reporting Agencies that Plaintiff was thirty days delinquent on a mortgage payment, id. ¶ 28, and the Credit Reporting Agencies then deliberately and knowingly published this derogatory information regarding Plaintiff's credit, id. ¶ 29. Prior to filing his complaint, Plaintiff disputed the inaccuracies within his consumer credit report directly with Defendant and with each of the Credit Reporting Agencies. Pl.'s Opening Br. 1, ECF No. 44. However, the dispute process in which Plaintiff engaged did not resolve the dispute in his favor. Id.

---

[2] Shortly after filing his complaint, Plaintiff settled his disputes with each of the Credit Reporting Agencies, leaving PennyMac as the sole remaining defendant in the case. Pl.'s Opening Br. 1.

Plaintiff alleged two specific claims against Defendant in its capacity as his mortgage servicer: Count Six-violation of 15 U.S.C. § 1681s-2(b)(1)(A) "by failing to fully and properly investigate" Plaintiff's disputes regarding the inaccurate reporting of his mortgage payment, id. ¶ 70, and Count Seven—violation of 15 U.S.C. § 1681s-2(b)(1)(B) "by failing to review all relevant information provided by the consumer reporting agencies," id. ¶ 91. While Plaintiff did not demand a specific dollar amount in his complaint, Plaintiff requested relief in the form of actual damages, statutory damages, punitive damages, costs and attorney's fees, specific performance and injunctive relief, and "such other relief the Court deems just and proper." Id. ¶ 99.

Plaintiff's billing records reflect contact with Defendant's counsel on August 18, 2016, to inquire about settlement. Billing Records 19, ECF No. 44-1. Plaintiff initially offered to settle the case against Defendant for $120,000, and on November 10, 2016, Defendant responded with a counteroffer to settle for $5,000. Emails Between Counsel, ECF No. 48-1, at 15. Plaintiff's counsel immediately responded, reducing Plaintiff's settlement demand to $119,000, but explaining that "[w]e will not counter a response that is outside of a reasonable settlement range." Id. As of November 10, 2016, when this settlement discussion occurred, Plaintiff

had accrued attorney's fees in the amount of $51,193.75. 2d
Rotkis Decl. ¶ 3, ECF No. 52-1. Between November 10, 2016, and
November 30, 2016, the parties continued to pursue discovery,
including coordinating, preparing for, and taking depositions.
Id. ¶ 4. Then, on November 30, 2016, Defendant made the
following Offer of Judgment:

> Pursuant to Rule 68 of the Federal Rules of Civil
> Procedure, Defendant Pennymac Loan Services, LLC N.A.
> ("Pennymac"), by counsel, hereby offers to allow
> judgment to be taken against it in this action as to
> all claims asserted against it by Plaintiff David D.
> Denton ("Plaintiff"), in the amount of (a) Five
> Thousand Dollars ($5,000.00) for actual, statutory,
> and/or punitive damages; and (b) all reasonable costs
> incurred in this action to the date of this offer,
> including reasonable attorneys' fees incurred as of
> the date of this offer, as determined by the Court,
> payable to Plaintiff's Counsel.

Offer of J., ECF No. 41-1 (emphasis added). The same day,
Plaintiff accepted the Offer of Judgment and filed a notice of
acceptance with the Court. Not. of Acceptance of R. 68 Offer of
J., ECF No. 41.

After the parties failed to agree on reasonable attorney's
fees, Plaintiff filed a motion seeking attorney's fees and
costs, ECF No. 43, and a memorandum and exhibits in support, ECF
No. 44. On January 18, 2017, Defendant filed a brief in
response, arguing that the Court (1) should reduce Plaintiff's
requested fee award due to Plaintiff's limited success and (2)
should exclude fees incurred after the Offer of Judgment. ECF

No. 48, at 5, 13. Plaintiff filed a reply brief on January 28, 2017, together with additional supporting documentation. ECF No. 52. On April 7, 2017, Plaintiff submitted a motion for leave to file supplemental authority in support of his motion for attorney's fees and costs. ECF No. 56. Defendant responded with a brief in opposition on April 20, 2017. ECF No. 57. Having been fully briefed, Plaintiff's motion for attorney's fees and costs, and Plaintiff's motion to supplement, are ripe for review.

## II. Standard for Attorney's Fees Award

### A. Entitlement to a Fee Award

Traditionally, under the "American Rule," each party in a lawsuit bears its own attorney's fees. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). However, Congress may shift the attorney-fee burden through a fee-shifting statute, id., such as the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Under FCRA, Congress directed courts to award "the costs of the action together with reasonable attorney's fees" to a consumer "in the case of any successful action to enforce liability" under this statute. 15 U.S.C. § 1681o; see also 15 U.S.C. § 1681n(a)(3).

The parties also may shift and/or limit the attorney-fee burden, such as by an offer of judgment made pursuant to Federal Rule of Civil Procedure 68(a). See Grissom v. The Mills Corp.,

549 F.3d 313, 320 (4th Cir. 2008) (holding that, under the Rule 68 offer of judgment in the case, plaintiff was entitled to attorney's fees up to the date of the offer). Under Rule 68(a), a defendant may "serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If, within 14 days, the plaintiff serves written notice accepting the defendant's offer of judgment, the clerk must then enter the judgment. Id.

After a plaintiff accepts a Rule 68 offer of judgment, a plaintiff may recover attorney's fees according to the "specified terms" in the offer of judgment. Fed. R. Civ. P. 68(a); Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 12 Fed. Prac. & Proc. Civ. § 3005.1 (2d ed. Apr. 2017 update) ("But here again defendants can provide otherwise in their [Rule 68] offers; if the offer explicitly limits the fee award to fees incurred before the date of the offer, further legal work should not be included."); see Guerrero v. Cummings, 70 F.3d 1111, 1114-1113 (9th Cir. 1995) (holding that an offer of judgment for "reasonable attorney fees and costs incurred . . . prior to the date of this offer in an amount to be set by the court" unambiguously excluded attorney's fees in preparation of the fee petition). Unless the "specified terms" in the offer of judgment provide otherwise, a plaintiff has two potential avenues for recovery of attorney's fees: (1) under Rule 68, as

"costs then accrued," or (2) under a fee-shifting statute, such as FCRA. <u>Cooper v. Verifications, Inc.</u>, No. 1:04-CV-385-TS, 2008 WL 5332190, at *4 (N.D. Ind. 2008).

## B. Calculation of a "Reasonable" Fee Award

If the plaintiff is entitled to attorney's fees, the Court must then calculate "reasonable" attorney's fees for the case. The United States Court of Appeals for the Fourth Circuit has outlined a three step framework for calculating a reasonable attorney's fee:

> First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in <u>Johnson v. Georgia Highway Express Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974). <u>Id.</u> at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." <u>Id.</u> at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." <u>Id.</u>

<u>McAfee v. Boczar</u>, 738 F.3d 81, 88 (4th Cir. 2013), <u>as amended</u> (Jan. 23, 2014) (footnote omitted).[3]

---

[3] The Court notes that many of the cases cited throughout this Opinion and Order analyze statutes authorizing attorney's fees in contexts different from the instant case. However, the United States Supreme Court has noted that the same legal standards for attorney's fees awards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" <u>Hensley</u>, 461 U.S. at 455 n.7; <u>see</u> <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 243 (4th Cir. 2009) (applying the traditional attorney's fees calculation method to an attorney's fees request under FCRA).

The calculation of a lodestar figure is "[t]he most useful starting point for determining the amount of a reasonable fee," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley, 461 U.S. at 433; see Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (characterizing the lodestar calculation as "the guiding light of . . . fee-shifting jurisprudence") (quotation marks and citation omitted). The fee applicant bears the burden of proving the reasonableness of the hours expended and the requested hourly rates, which generally requires submission of the attorney's own affidavit and timesheets as well as "'satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [the attorney] seeks an award.'" Grissom, 549 F.3d at 321 (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). In evaluating the submissions in order to determine both a reasonable rate and a reasonable number of hours expended, the lodestar analysis is guided by the following twelve factors (the "Johnson factors"):

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> outset of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the

> experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards
> in similar cases.

Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors identified by the Fifth Circuit in Johnson v. Ga. Highway Express Inc., 488 F.2d 714 (1974)); cf. Perdue, 559 U.S. at 550-52 (explaining why the objective lodestar approach is superior to the subjective approach outlined in Johnson, but failing to hold that it is improper to be informed by the Johnson factors when performing a lodestar analysis). Because Fourth Circuit precedent requires this Court to be guided by the Johnson factors in determining the lodestar figure, "to the extent that any of the Johnson factors has already been incorporated into the lodestar analysis," such factor(s) are not later considered a second time to make an upward or downward adjustment to the lodestar figure because doing so would "inappropriately weigh" such factor. McAfee, 738 F.3d at 91.

The second step in the fee calculation procedure requires the Court to exclude fees for counsel's time spent on unsuccessful claims that are unrelated to the successful claims. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 244 (4th Cir. 2009); see Hensley, 461 U.S. at 435 ("The congressional

9

intent to limit awards to prevailing parties requires that . . .
[unrelated claims based on different facts and legal theories]
be treated as if they had been raised in separate lawsuits, and
therefore no fee may be awarded for services on the unsuccessful
claim[s]."). The Supreme Court has recognized that "[i]t may
well be that cases involving such unrelated claims are unlikely
to arise with great frequency," because "[m]any civil rights
cases will present only a single claim," and in other cases, the
claims "will involve a common core of facts or will be based on
related legal theories." Hensley, 461 U.S. at 435. In such
latter circumstance, "[m]uch of counsel's time will be devoted
generally to the litigation as a whole, making it difficult to
divide the hours expended on a claim-by-claim basis," with the
nature of the lawsuit precluding it from being "viewed as a
series of discrete claims." Id.

The third and final step, after a lodestar calculation has
been made and any unsuccessful efforts on unrelated claims have
been excluded, requires the Court to award "'some percentage of
the remaining amount, depending on the degree of success enjoyed
by the plaintiff.'" Grissom, 549 F.3d at 321 (quoting Johnson
v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)). It is
appropriate for the Court to reduce an award at this third step
of the analysis if "'the relief, however significant, is limited
in comparison to the scope of the litigation as a whole.'"

McAfee, 738 F.3d at 92 (quoting Hensley, 461 U.S. at 439–40). "What the court must ask is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" Id. (quoting Hensley, 461 U.S. at 434). Accordingly, when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," even in cases "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. An attorney's fees award is therefore not driven by whether it was reasonable to file suit or whether plaintiff's counsel litigated the case "with devotion and skill"; rather, "the most critical factor is the degree of success obtained." Id.

## III. Discussion

Defendant makes two arguments in response to Plaintiff's requested attorney's fees award. First, Defendant argues that Plaintiff is only entitled to reasonable attorney's fees incurred up to the date of the Offer of Judgment. Second, Defendant argues that Plaintiff's fee award should be substantially reduced to account for Plaintiff's limited degree of success, as reflected by the amount of damages Plaintiff demanded in initial settlement negotiations versus the amount of

damages Plaintiff actually obtained. In considering Plaintiff's attorney's fees request and Defendant's arguments in opposition, the Court will determine Plaintiff's entitlement to a fee award (both pre and post Offer of Judgment), calculate the lodestar figure, and then adjust, if necessary, the lodestar according to Plaintiff's degree of success. McAfee, 738 F.3d at 88.

## A. Entitlement to a Fee Award

The instant case was filed pursuant to FCRA, seeking to remedy Defendant's alleged failure to fully and properly investigate Plaintiff's disputes regarding the inaccurate reporting of his mortgage payment, Compl. ¶ 70, and the alleged failure to review all relevant information provided by the consumer reporting agencies, id. ¶ 91. On November 30, 2016, Plaintiff accepted Defendant's Offer of Judgment, in which Defendant "allow[ed] judgment to be taken against it in this action as to all claims asserted against it by Plaintiff." Offer of J.; Not. of Acceptance of R. 68 Offer of J. As part of the Offer of Judgment, Defendant offered to pay "all reasonable costs incurred in this action to the date of this offer, including reasonable attorneys' fees incurred as of the date of this offer, as determined by the Court." Offer of J.

While the parties agree that Plaintiff is entitled to some award of attorney's fees, the parties vigorously dispute whether Plaintiff is entitled to attorney's fees incurred after the

12

Offer of Judgment. Def.'s Resp. Br. 13, ECF No. 48 (arguing that Plaintiff is not entitled to post-Offer attorney's fees because the explicit terms of the Offer of Judgment excluded such fees); Pl.'s Reply Br. 19, ECF No. 52 (arguing that a prevailing party is, as a matter of law, entitled to compensation for time spent litigating the fee petition). According to the billing records submitted, Plaintiff's counsel, Ms. Susan Rotkis, billed an additional 9.5 hours after November 30, 2016, the date that Plaintiff accepted the Offer of Judgment. Billing Records at 22-24. Counsel billed for the following tasks: client contact, compilation of a billing estimate for attorney's fees in the case, telephone conference with opposing counsel, drafting the declaration for the fee petition, and drafting the motion for attorney's fees and brief in support. Id.

Plaintiff is a successful party because he accepted Defendant's Offer of Judgment. See Grissom, 549 F.3d at 319 (holding that a party who achieved a favorable resolution pursuant to an offer of judgment was a prevailing party for purposes of determining attorney's fees eligibility). As a successful party, Plaintiff may potentially recover attorney's fees under either (1) Rule 68, as "costs then accrued," or (2) a fee-shifting statute, such as FCRA, according to the terms of the Offer of Judgment. Cooper, No. 1:04-CV-385-TS, 2008 WL

5332190, at \*4. The Court will address Plaintiff's entitlement to attorney's fees both under Rule 68 and under FCRA.

## 1. Rule 68: "Costs then accrued"

Under Rule 68(a), a defendant may make an offer of judgment "on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a) (emphasis added). Thus, under Rule 68, a plaintiff who accepts an offer of judgment is entitled to costs accrued up to the point of the offer. Id. Recoverable "costs" include attorney's fees when "the underlying statute defines 'costs' to include attorney's fees." Marek v. Chesny, 473 U.S. 1, 9 (1985). In such cases, attorney's fees "are to be included as costs for purposes of Rule 68." Id.

Here, Plaintiff is not entitled to attorney's fees under Rule 68 as "costs then accrued" because FCRA does not define "costs" as including attorney's fees. Cooper, No. 1:04-CV-385-TS, 2008 WL 5332190, at \*5. The instant civil case was filed pursuant to FCRA, in which Congress directed courts to award "the costs of the action together with reasonable attorney's fees" to a consumer "in the case of any successful action to enforce liability" under this statute. 15 U.S.C. § 1681o (emphasis added); see also 15 U.S.C. § 1681n(a)(3). "FCRA's definition of costs does not encompass attorney fees. Indeed, the plain language of the FCRA's provisions for civil liability for both willful noncompliance and negligence clearly treat

14

costs and attorney fee separately." Cooper, No. 1:04-CV-385-TS, 2008 WL 5332190, at *5. Because attorney's fees are not considered part of "costs" under FCRA, Rule 68's authorization of "costs then accrued" does not encompass attorney's fees. Fed. R. Civ. P. 68(a); Marek, 473 U.S. at 9.[4] Therefore, Plaintiff may not recover attorney's fees as part of his Rule 68 costs then accrued.

## 2. Fee-shifting Statute: FCRA

While Plaintiff may not recover attorney's fees as part of Rule 68 "costs," Plaintiff may recover attorney's fees pursuant to the fee-shifting provision of FCRA, though such attorney's fees may be limited by the terms in the Offer of Judgment.

---

[4] Defendant also argues that Plaintiff is not entitled to post-Offer attorney's fees because a Rule 68 offer of judgment limits costs to only the costs accrued as of the offer date. Def.'s Resp. Br. 13-14. Because attorney's fees under FCRA are not considered "costs" within the definition of Rule 68, attorney's fees are not limited as "costs then accrued" under Rule 68. For example, in Bradford v. HSBC Mortgage Corporation, 859 F. Supp. 2d 783 (E.D. Va. 2012), the offer of judgment included "costs and reasonable attorney's fees in connection with this claim, if provided by statute," id. at 788 (emphasis added). The terms of the offer of judgment only limited costs and attorney's fees to what was authorized by statute, but did not otherwise provide any limitation. The claim in the case was brought under the Truth in Lending Act ("TILA"), which provided that a successful party was entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640. In construing the offer of judgment in Bradford, the court held that Rule 68's limitation on "costs then accrued" did not limit the award of post-offer attorney's fees because the TILA "unambiguously excludes attorney's fees from costs." Bradford, 859 F. Supp. 2d at 797. Because attorney's fees were not considered "costs," and therefore not limited by Rule 68's limitation on "costs then accrued," but attorney's fees were authorized under TILA, and the terms of the offer of judgment allowed for attorney's fees as provided by statute, the court in Bradford held that post-offer attorney's fees were recoverable. See id. Here, unlike the offer of judgment in Bradford that encompassed all attorney's fees provided by statute, Defendant's Offer of Judgment limited the payment of attorney's fees to only those incurred up to the date of the Offer.

15

Cooper, No. 1:04-CV-385-TS, 2008 WL 5332190, at *4. When an offer of judgment "is ambiguous or silent as to whether attorney fees have been included, the party may recover fees if independently authorized by statute." Id. A consumer has a statutory right to reasonable attorney's fees "in the case of any successful action to enforce liability" under FCRA. 15 U.S.C. § 1681n(a)(3); 15 U.S.C. § 1681o. It is undisputed that Plaintiff achieved a "successful" resolution of his action by accepting Defendant's Offer of Judgment, and therefore is entitled to attorney's fees under FCRA. See Offer of J. (allowing judgment to be taken against Defendant "as to all claims asserted against it by Plaintiff"); Pl.'s Opening Br. 3; Def.'s Resp. Br. 3; see also Grissom, 549 F.3d at 319 (holding that a party who achieved a favorable resolution pursuant to an offer of judgment was a prevailing party for purposes of determining attorney's fees eligibility). While the parties agree that Plaintiff is entitled to some award of attorney's fees, the parties disagree as to whether Plaintiff is entitled to attorney's fees incurred after the Offer of Judgment. Def.'s Resp. Br. 13; Pl.'s Reply Br. 19.

It is "well settled that the time spent defending entitlement to attorney's fees is properly compensable" when a party recovers attorney's fees under a fee-shifting statute. See Trimper v. City of Norfolk, 58 F.3d 68, 77 (4th Cir. 1995)

(internal citation omitted). However, while Plaintiff achieved a successful resolution of his action and therefore would usually be entitled to all reasonable attorney's fees, including fees in preparation of a fee petition, Plaintiff achieved the successful resolution pursuant to a Rule 68 Offer of Judgment authorizing judgment "on specified terms." Fed. R. Civ. P. 68(a) (emphasis added). Courts interpret an offer of judgment as a contract, enforcing the terms that the parties agreed upon when the terms unambiguously address attorney's fees. Grissom, 549 F.3d at 320 (looking to the "contract language" of the offer of judgment to determine whether post-offer attorney's fees were included in the terms of the offer of judgment); see Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 670 (2016), as revised (Feb. 9, 2016) (applying "basic principles of contract law" to evaluate the effect of a rejected Rule 68 offer of judgment); Webb v. James, 147 F.3d 617, 620 (7th Cir. 1998) ("[I]n general, courts use contract principles to interpret offers of judgment."). In order for the terms of the Offer of Judgment to limit Plaintiff's statutory right to attorney's fees under FCRA, the terms of the Offer of Judgment must specifically address entitlement to attorney's fees. Cooper, No. 1:04-CV-385-TS, 2008 WL 5332190, at *5 (quoting Aynes v. Space Guard Prods., Inc., 201 F.R.D. 445, 448 (S.D. Ind. 2001)).

Here, in the Offer of Judgment, Defendant explicitly offered to pay Plaintiff's "reasonable attorneys' fees incurred as of the date of this offer, as determined by the Court." Offer of J. (emphasis added); see Guerrero, 70 F.3d at 1114-1113. Plaintiff accepted Defendant's Offer of Judgment on these terms. Not. of Acceptance of R. 68 Offer of J. Thus, the terms of the Offer of Judgment determine Plaintiff's entitlement to attorney's fees. Cooper, No. 1:04-CV-385-TS, 2008 WL 5332190, at *5; see Doe v. Odenton Volunteer Fire Co., No. CIV.A RDB-08-1281, 2009 WL 3418567, at *4 (D. Md. 2009) (holding that post-offer fees were not allowed when the offer of judgment expressly provided that the plaintiff was entitled to "reasonable attorney's fees and costs accrued to date"); Watson v. NCO Fin. Sys., Inc., No. 14-CV-1755-JAD-VCF, 2015 WL 1959163, at *2 (D. Nev. 2015) ("Fees incurred after [the date of the offer of judgment], are excluded under the offer of judgment's plain language."). Because the plain language of Defendant's Offer of Judgment excludes attorney's fees after the "date of this offer," Offer of J., pursuant to the terms of the Offer of Judgment, the Court finds that Plaintiff is not entitled to fees incurred while preparing the attorney's fees petition. Guerrero, 70 F.3d at 1114-1113 ("Because the plain language of the settlement offers limits attorney's fees to those accrued prior to the date of the offers, the district court did not err

in finding that the [plaintiff's] acceptance clearly and unambiguously waived attorney's fees incurred thereafter.").

Thus, Plaintiff is not entitled to attorney's fees under Rule 68 "costs," but is entitled to attorney's fees under FCRA's statutory fee-shifting provision, as limited by the "specified terms" that Plaintiff accepted in the Offer of Judgment. Grissom, 549 F.3d at 320 ("Rule 68, by its plain and unambiguous terms, provides for entry of judgment in favor of the plaintiff on [the] terms specified in an offer of judgment."). The "specified terms" of the Offer of Judgment in this case limited the attorney's fees to only fees incurred as of the date of the Offer of Judgment. Consequently, the Court reduces Plaintiff's attorney's fees award by the **9.5 post-Offer hours** requested because the terms of the Offer of Judgment explicitly exclude such hours.

## B. Calculation of a "Reasonable" Fee Award

### 1. Lodestar Analysis

The first step in calculating a reasonable fee is to determine the "lodestar" figure "by multiplying the number of reasonable hours expended times a reasonable rate." McAfee, 738 F.3d at 88 (quoting Robinson, 560 F.3d at 243). Based upon the

billing records and affidavits submitted to the Court, Plaintiff appears to request the following attorney's fees:[5]

### Requested Hours and Hourly Rates

| NAME | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|
| Susan Rotkis | 152.2 | $ 475 | $ 72,295.00 |
| Len Bennett | 8.3 | $ 625 | $ 5,187.50 |
| CCM | 2.2 | $ 400 | $ 880.00 |
| Vicki Ward (paralegal) | 25 | $ 200 | $ 5,000.00 |
| TOTAL | | | $ 83,362.50 |

#### a. Reasonable Rate

As discussed above, Plaintiff is entitled to reasonable attorney's fees incurred as of the date of the Offer of Judgment. A party entitled to recover attorney's fees "bears the burden of establishing the reasonableness of the hourly rates requested." Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987). "The reasonable rate is 'to be calculated according to the prevailing market rates in the relevant community.'" LaFleur v. Dollar Tree Stores, Inc., 189 F. Supp. 3d 588, 596 (E.D. Va. 2016) (quoting Blum v. Stenson, 465 U.S. 886, 895

---

[5] Plaintiff also appears to request $3,698.14 in costs, which would result in a total requested amount of $87,060.64. Billing Records at 22, ECF No. 44-1. However, in his motion for attorney's fees, Plaintiff calculated his total requested costs and attorney's fees as $85,644.39. Mot. for Award of Att'y Fees & Costs 1. It is unclear how Plaintiff calculated his total amount of fees or what documentation he relied upon. Thus, the Court uses the numbers from Plaintiff's billing records and affidavits to determine what Plaintiff is requesting in attorney's fees, subject to the limitation that Plaintiff's recovery is not more than his explicitly requested amount of $85,644.39.

(1984)). This is generally accomplished "through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the [relevant] market.'" Project Vote/Voting for America, Inc. v. Long, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting Spell, 824 F.2d at 1402). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994).

Here, both parties have submitted affidavits from disinterested counsel commenting on Plaintiff's requested attorney's fees. Compare Pl.'s Opening Br. Ex. 2, Pittman Decl., ECF No. 44-2; with Def.'s Resp. Br. Ex. 2, Fain Decl., ECF No. 48-2. Plaintiff has also submitted an affidavit by the lead attorney on the case, Ms. Rotkis, that describes her relevant work experience and the work done on this case, see generally Pl.'s Ex. 1, Rotkis Decl., ECF No. 44-1, and submitted a copy of a declaration by Mr. Geoffrey Miller commenting on the reasonableness of attorney's fees in a 2014 FCRA class action lawsuit, id. Pl.'s Ex. 3, Miller Decl., ECF No. 44-3 (advising that an hourly rate of $575 was reasonable for Mr. Len Bennett of Consumer Litigation Associates).

Plaintiff requests the following hourly rates for the attorneys who worked on the case: $475 for Ms. Rotkis, senior associate with twenty-one years of experience and lead attorney in the instant case, and $625 for Mr. Bennett, law firm founding partner with twenty-three years of experience and specialist in consumer litigation law. Pl.'s Opening Br. 11. Additionally, Plaintiff appears to request an hourly rate of $200 for Ms. Vicki Ward, a senior paralegal, Rotkis Decl. ¶ 13; Pl.'s Opening Br. 13 n.5, and $400 for someone identified as "CCM" in the billing records, see generally Billing Records at 17-22.

**Requested Rates**

| NAME | RATE REQUESTED |
|------|----------------|
| Susan Rotkis | $ 475 |
| Len Bennett | $ 625 |
| CCM | $ 400 |
| Vicki Ward (paralegal) | $ 200 |

Plaintiff offers a declaration by an attorney, Mr. Dale Pittman, in support of the reasonableness of these fee amounts. See generally Pittman Decl., Pl.'s Ex. 2. Based upon extensive personal knowledge of consumer litigation cases, discussions with other attorneys, advertised rates, case decisions and other publications, id. ¶ 18, Mr. Pittman states that he believes the rates charged by Mr. Bennett and Ms. Rotkis to be "fair, reasonable, and within the prevailing market rates for attorneys of similar education, training, and experience," id. ¶ 31. Mr.

Hugh Fain, in a declaration submitted by Defendant, does not challenge Plaintiff's requested hourly rates, but notes that they are the "maximum hourly rates." Fain Decl. ¶ 21. Finally, in its response brief, Defendant states that it "does not dispute [Plaintiff's requested] rates for the purposes of the present Fee Petition." Def.'s Resp. Br. 12.

Notwithstanding the absence of a "dispute" regarding the requested rates, the Court is required by FCRA and the terms of the Offer of Judgment to determine a reasonable rate. 15 U.S.C. § 1681o (directing courts to award "reasonable attorney's fees" under FCRA); see also 15 U.S.C. § 1681n(a)(3) (same); Offer of J. (offering "reasonable attorneys' fees . . . as determined by the Court"). In determining the reasonable rates, the Court is required to consider the relevant Johnson factors.[6] Barber, 577 F.2d at 226 n.28. First, the Court evaluates Johnson factor two, the novelty and difficulty of questions raised, and Johnson factor three, the skill required to perform the legal services of the various attorneys and paralegals. While Defendant does not argue either of these factors, Plaintiff acknowledges that the "questions presented by this case are not unusually novel or difficult in this court or to Plaintiff's counsel," concluding that the "novelty and difficulty of the issues therefore

---

[6] While the Court considers the Johnson factors out of numeric order, the Court does so for analytic clarity by evaluating factors together that analyze closely related topics.

provides no basis to adjust the lodestar downward or upward."
Pl.'s Opening Br. 8. However, while the novelty and difficulty
of the consumer law issues raised may not have been unusual for
Plaintiff's experienced counsel, Plaintiff argues that there are
"only a few attorneys nationally who are willing *and able* to
litigate the underlying claims in this case [because m]ost
attorneys do not understand or claim spot the legal issues
involved in such [consumer protection] cases." Id. at 9; see
Flame S.A. v. Indus. Carriers, Inc., No. 2:13-CV-658, 2014 WL
7185199, at *6 (E.D. Va. 2014) (authorizing the requested hourly
rate because of each attorney's "skillful and proficient
handling" of the legal issue). However, the Fourth Circuit has
been cautious about awarding attorneys higher hourly rates based
solely upon the argument that "consumer law is a special field,"
finding in Robinson v. Equifax Information Services, LLC, that
such argument was "untenable." 560 F.3d at 245 (reversing the
holding of the district court in Alexandria that hourly fees of
$425 and $305 were reasonable in a consumer law case when the
plaintiff failed to provide any evidence that the requested
rates were reasonable, such as an affidavit from an attorney
outside of the law firm regarding the market rate). Therefore,
the Court concludes that Johnson factor two, the novelty and
difficulty of questions raised, and Johnson factor three, the

skill required to perform the legal services of the various attorneys and paralegals, are neutral factors.

Next, the Court considers Johnson factor four, the opportunity costs in pressing the litigation, Johnson factor six, the attorney's expectations at the outset of the litigation, and Johnson factor ten, the asserted undesirability of the case within this legal community. Plaintiff asserts that Consumer Litigation Associates is a small law firm and thus representing a client on a contingent fee or fee-shifting basis necessarily involved loss of other opportunities. The Court also considers Plaintiff's representation that "there are only a handful of attorneys who practice in this legal market, in federal court and in the area of consumer protection law." Pl.'s Opening Br. 18. According to Plaintiff, the case was undesirable because "FCRA is a complex statute and advancing the costs required to litigate an inaccuracy case—which often include the deposition of overseas ACDV agents or employees in other states—can be costly and risky, as these cases are often taken on a contingency fee, with no guarantee of payment." Id. Thus, in addition to the lost opportunity to represent other paying clients when an attorney accepts a contingent fee representation (opportunity cost), the Court considers how the contingent nature of consumer protection cases may also make such cases less desirable within the legal community. Because

"[t]he vast majority of consumer protection claims arise out of clients facing financial distress," such cases are often undesirable because of the "far greater risk that the attorney will not see any payment at all than an attorney practicing in other areas of the law." Won Kim v. U.S. Bank, N.A., No. 1:12-CV-986, 2013 WL 3973419, at *5 (E.D. Va. 2013); Thomas v. FTS USA, LLC, No. 3:13CV825, 2017 WL 1148283, at *2 (E.D. Va. 2017), R & R adopted sub nom., No. 3:13CV825, 2017 WL 1147460 (E.D. Va. 2017) ("[B]y deviating from the American Rule, . . . [FCRA] incentivizes attorneys to prosecute these cases that may otherwise be ignored due to minimal fees for the attorney."); cf. Robinson, 560 F.3d at 245 (finding it "untenable" to award an attorney a rate thirty-five percent higher than his hourly rate the prior year because of the "risk associated in litigating an FCRA case on a contingent basis"). Having considered Plaintiff's representations, the Court concludes that opportunity cost, counsel's expectations, and the asserted undesirability of the case are neutral factors, justifying neither an increase nor decrease in the fee award. See Pl.'s Opening Br. 10-11, 16 (acknowledging that Johnson factors four and six were neutral).

In evaluating Johnson factor seven, the time limitations of this case, the Court observes that this case was initially filed on May 2, 2016, Compl., and the merits of the case were resolved

on November 30, 2016 when Plaintiff accepted Defendant's Offer
of Judgment, Offer of J. Thus, within seven months of filing
his complaint, Plaintiff had achieved a complete resolution of
both of his claims against Defendant. Having considered the
chronology of the case, the Court finds that Johnson factor
seven, the time limitations of the case, is a neutral factor.
See Pl.'s Opening Br. 16 (acknowledging that Johnson factor
seven was neutral).

The Court next evaluates Johnson factor eleven, the nature
of the professional relationship between Plaintiff and his
attorneys. Plaintiff's counsel was engaged solely to represent
Plaintiff in the instant matter. Pl.'s Opening Br. 18.
Plaintiff states that this factor is either "inapplicable or
neutral" in the context of an "attorney whose representation is
limited to consumer protection claims, which are not ongoing
matters." Id. Consequently, the Court concludes that Johnson
factor eleven, the nature of the professional relationship
between Plaintiff and his attorneys, does not provide a basis
for adjusting Plaintiff's requested hourly rate.

The Court further considers Johnson factor five, the
"customary hourly rate of compensation" charged to clients for
similar work. Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986)
(internal citations omitted). In evaluating Johnson factor
five, the Court considered the affidavits submitted by both

27

parties regarding reasonable attorney's fees for the specific legal work in this case and the customary hourly rates typically charged to clients for similar work in similar cases. See Rum Creek Coal, 31 F.3d at 175 (determining that the customary rate is the rate that counsel could command in the market based upon the rates paid to attorneys of "comparable skill in similar circumstances" and counsel's own typical fees for "similar services in similar circumstances"). In reviewing counsel's typical fees, the Court considers Ms. Rotkis's assertion that, while she rarely accepts clients on an hourly basis, within the past two years she has been paid an hourly rate of $425 by clients and by parties to mediation. Rotkis Decl. ¶ 12. The Court also considers that the $425 hourly rate that Ms. Rotkis has charged to her fee-paying clients is lower than her requested hourly rate of $475 in the instant case. See JP ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty., 641 F. Supp. 2d 499, 516 (E.D. Va. 2009) (noting that fee-shifting statutes are not intended "to provide a windfall to plaintiff's counsel" (quoting Trimper, 58 F.3d at 73)). Thus, while Defendant has not challenged Ms. Rotkis's higher requested rate, the Court finds that Johnson factor five, the "customary hourly rate of compensation" charged to clients for similar work, weighs in favor of a lower hourly rate than Plaintiff has requested.

Next, in determining the reasonable rate within the relevant market, the Court considers under Johnson factor twelve the hourly rates awarded in similar cases. Grissom, 549 F.3d at 323 (evaluating the approved hourly rates in cited cases as examples of "similar fee awards in like cases"); E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs, 724 F.3d 561, 572 (4th Cir. 2013) ("[P]rior fee awards constitute evidence of a prevailing market rate that may be considered in fee-shifting contexts."). Because the parties have cited to so few consumer law attorney's fees cases from the Norfolk Division, the Court broadly surveyed attorney's fees awards in recent consumer law cases in the entire Eastern District of Virginia and attorney's fees awards in other types of cases within the Norfolk Division of the Eastern District of Virginia in order to assist it in determining what the prevailing market hourly rate for an attorney's fees award would be for a similar case in the Norfolk Division.[7] Id. at 572 ("[W]e have held that

---

[7] See Arriola v. Pardo, No. 1:14CV0745 JFA, 2015 WL 3404725, at *6 (E.D. Va. 2015) (authorizing in the Alexandria Division of the Court the following hourly rates in a Consumer Credit Protection Act case: $375 for an attorney with nine years of experience; $300 for an attorney with four years of experience; and $175 for a paralegal); Won Kim, No. 1:12-CV-986, 2013 WL 3973419, at *4 (finding in the Alexandria Division of the Court an hourly rate of $380 to be reasonable for an "experienced federal court litigator" in a consumer law case); Bradford, 859 F. Supp. 2d at 798 (finding in the Alexandria Division of the Court an hourly rate of $300 to be reasonable in a consumer law case for an attorney with eleven years of experience); see also Crump v. Dep't of Navy, No. 2:13CV707, 2017 WL 1158244, at *9 (E.D. Va. 2017) (finding in the Norfolk Division of the Court the following hourly rates to be reasonable in an employment law case: $400 for a partner with nearly forty years of experience, $315 for an associate with nineteen years of experience,

'[e]vidence of fee awards in comparable cases is generally sufficient to establish the prevailing market rates in the relevant community.'" (quoting Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 251 (4th Cir. 2004))). Additionally, the Court looked at cases in which courts have specifically approved Plaintiff's counsel's hourly rates. The court in the Eastern District of Virginia, Richmond Division, found an hourly rate of $400 to be reasonable for Ms. Rotkis and an hourly rate of $575 to be reasonable for Mr. Bennett in a 2014 FCRA class action lawsuit. Rotkis Decl. ¶ 18; Final Order & J., James v. Experian Info. Sols., No. 3:12CV902, at ¶ 9(d) (E.D. Va. 2014). Additionally, Mr. Bennett's hourly rate of $575 was again found to be reasonable in the Eastern District of Virginia, Richmond Division, in another 2014 FCRA class action lawsuit. Miller Decl. ¶ 30, 34 (asserting that Mr. Bennett's

and $150 for a paralegal with extensive legal experience); Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 403 (E.D. Va. 2015), aff'd, No. 15-2197, 2017 WL 888234 (4th Cir. Mar. 6, 2017) (authorizing in a constitutional law case in the Norfolk Division of the Court hourly rates of $400 for attorneys with over forty years of experience and $325 for an attorney with eighteen years of experience); Carr v. Rest Inn, Inc., No. 2:14-CV-609, 2015 WL 5177600, at *4 (E.D. Va. 2015) (finding in the Norfolk Division of the Court that an hourly rate of $275 and $310 would be reasonable for a lawyer who successfully resolved a Fair Labor Standards Act case); Two Men & A Truck/Int'l, Inc. v. A Mover Inc., 128 F. Supp. 3d 919, 927 (E.D. Va. 2015) (approving in the Norfolk Division of the Court in an intellectual property case hourly rates of $600 for a partner, $400 for an associate, and $250 for a paralegal); Lismont v. Alexander Binzel Corp., 47 F. Supp. 3d 443, 459 (E.D. Va. 2014) (authorizing in the Norfolk Division of the Court in a patent case hourly rates of $550 for an attorney who had practiced for thirty-eight years but only $170 for a first year associate); JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 738 (E.D. Va. 2014) (finding in the Norfolk Division of the Court an hourly rate of $225 to be reasonable for a fifth-year associate acting as lead counsel in a case over promissory notes).

rate of $575 was reasonable in the case of <u>Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.</u>); <u>Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.</u>, No. 3:11CV754, 2014 WL 4403524, at *15 (E.D. Va. 2014), <u>aff'd sub nom.</u> <u>Berry v. Schulman</u>, 807 F.3d 600 (4th Cir. 2015) (approving the amount of attorney's fees that Mr. Miller had recommended in his declaration). These court-approved hourly rates are lower than those that Plaintiff requests in the instant case: Ms. Rotkis previously had $400 approved but now requests $475, and Mr. Bennett previously had $575 approved but now requests $625. Thus, in determining the reasonableness of Plaintiff's requested hourly rates under <u>Johnson</u> factor twelve, having considered the hourly rates awarded in similar cases, and compared such rates to the hourly rates requested in this case,[8] the Court concludes that the rates awarded in similar cases weigh in favor of a lower attorney's fees award than Plaintiff has requested.

---

[8] The Court also notes that while this district spans a wide geographic area, at least one district in our circuit that spans a smaller geographic area has established by local court rule guidelines for presumptively reasonable hourly rates in attorney's fees petitions. While such rates are not necessarily indicative of the prevailing local market rate in this Court's jurisdiction, the Court notes that in the District of Maryland, the following are guidelines for reasonable hourly rates: "Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425. Lawyers admitted to the bar for twenty (20) years or more: $300-475." Md. Fed. Ct. R. App. B(3). Finally, while helpful, "[t]hese rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees. . . . [T]here are attorneys for whom, and cases for which, the market rate differs from these guideline rates." <u>Id.</u> n.6.

Finally, with respect to Johnson factor nine, the Court considers the experience and reputation of each attorney. Mr. Bennett is a founding partner of Consumer Litigation Associates and provided oversight in the instant case. Rotkis Decl. ¶ 11. According to Mr. Pittman, "[n]o other law firm comes close to [Consumer Litigation Associates] in the number of consumer protection cases handled in the Eastern District." Pittman Decl. ¶ 23. He describes the firm as "one of America's best consumer-side consumer protection litigation law firms." Id. ¶ 21. According to Mr. Pittman, Mr. Bennett is a "trail blazer within the still relatively young consumer protection bar in the United States," id. ¶ 24, and Mr. Miller asserts that Mr. Bennett is among "the most experienced FCRA class action lawyers in the United States," Miller Decl. ¶ 39(d); compare Alexander v. Se. Wholesale Corp., No. 2:13CV213, 2014 WL 1165844, at *11 (E.D. Va. 2014) (stating that the "prevailing market rate" in the Norfolk Division of the Court for consumer law attorneys with thirty-five years of experience was between $300 and $450 per hour); with James, No. 3:12CV902, at ¶ 9(d) (approving a settlement in a consumer class action lawsuit in the Richmond Division of the Court after discussing on the record that an hourly rate of $575 was reasonable for Mr. Bennett).

The Court next considers the experience and reputation of Ms. Rotkis, lead attorney in the instant case. Ms. Rotkis has

twenty-one years of experience as an attorney and has represented clients in over 300 consumer law cases in federal and state courts. Rotkis Decl. ¶ 2, 4. She periodically teaches continuing legal education classes on issues of consumer protection, such as litigation under FCRA, and is a member of the National Association of Consumer Advocates. Id. ¶ 8-9. Mr. Pittman states that he has known Ms. Rotkis since she first became a full-time law clerk for the Honorable Dennis Dohnal, in the Richmond Division of this court, Pittman Decl. ¶ 25, and has worked closely with her as co-counsel on cases since she joined Consumer Litigation Associates, id. ¶ 27. According to Mr. Pittman, Ms. Rotkis is "as bright as they come and fully capable of producing work at the speed and quality levels required both by the Rocket Docket and the high caseload at [Consumer Litigation Associates]." Id. ¶ 29; see Alexander, No. 2:13CV213, 2014 WL 1165844, at *11 (approving in the Norfolk Division of the Court an hourly rate of $390 as reasonable for a litigator who was "well-reputed and 'highly qualified' in the field of consumer law").

The Court also considers the experience of Ms. Ward, a paralegal in the instant case. According to Ms. Rotkis, Ms. Ward "is a highly skilled, senior paralegal with over 27 years [of] experience as a paralegal." Rotkis Decl. ¶ 13; see Virginia-Pilot Media Companies, LLC v. Dep't of Justice, No.

2:14CV577, 2016 WL 4265742, at \*5 (E.D. Va. 2016) (finding as reasonable an hourly rate of $155 for a paralegal with over 20 years of experience with the law firm). According to Ms. Rotkis, most of Ms. Ward's experience has been exclusively in consumer protection work. Rotkis Decl. ¶ 13. Last, in Plaintiff's submitted documentation, while there are billing entries for CCM, it is unclear who CCM is, what qualifications CCM has, or how CMM's hourly rate is justified at $400 per hour. Therefore, for the above reasons, the Court finds that Mr. Leonard's and Ms. Rotkis's experience weighs in favor of their requested hourly rates, while Ms. Ward's experience is more consistent with the $155 hourly rate awarded in Virginia-Pilot for a paralegal with over 20 years of experience. Virginia-Pilot, No. 2:14CV577, 2016 WL 4265742, at \*5; see also Crump, No. 2:13CV707, 2017 WL 1158244, at \*9 (authorizing $150 per hour for a paralegal with extensive legal experience). Without any description of CCM's qualifications, such as education or experience, the Court cannot determine a reasonable hourly rate for CCM.

Thus, notwithstanding the absence of a challenge by Defendant to Plaintiff's requested rates, the Court must conduct an independent evaluation of such requested rates because (1) FCRA requires the Court to award "reasonable" attorney's fees, see 15 U.S.C. § 1681o, (2) the Offer of Judgment states that

Defendant will pay Plaintiff's "reasonable attorneys' fees . . . as determined by the Court," Offer of J., and (3) Defendant requested that the Court award Plaintiff "not more than $5,000 in attorneys' fees" in responding to Plaintiff's request for $85,644.39 in attorney's fees, Def.'s Resp. Br. 16. Having considered all of the relevant Johnson factors, the Court finds the following hourly rates reasonable:

**Approved Rates**

| NAME | APPROVED RATE |
|---|---|
| Susan Rotkis | $ 425 |
| Len Bennett | $ 575 |
| "CCM" | $ 0 |
| Vicki Ward (paralegal) | $ 155 |

### b. Reasonable Hours

Having determined the reasonable hourly rates, the Court must next determine what hours were "reasonably expended" in the litigation. Hensley, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" (quoting S. Rep. No. 94-1011, p. 6 (1976))). In analyzing the hours reasonably expended, the Court considers Johnson factor one, the time and labor expended. Barber, 577 F.2d at 226 n.28. It is the obligation of counsel to "maintain billing time records in a manner that will enable a

reviewing court to identify distinct claims." Hensley, 461 U.S. at 437. Thus, in determining the reasonable time and labor expended, the Court reduces hours where documentation is "inadequate." See id. at 434.

Plaintiff has submitted billing records[9] and seeks compensation for the following hours expended in litigating this case:

**Requested Hours**

| NAME | HOURS | | |
|---|---|---|---|
| | LITIGATION | FEE PETITION | TOTAL |
| Susan Rotkis | 142.7 | 9.5[10] | 152.2 |
| Len Bennett | 8.3 | | 8.3 |
| "CCM" | 2.2 | | 2.2 |
| Vicki Ward (paralegal) | 25 | | 25 |

See generally Billing Records at 17-24; Rotkis Decl. ¶ 13.

### i. Mr. Bennett

In analyzing the time and labor expended according to Johnson factor one, Plaintiff's hours billed for Mr. Bennett's work on the case appear well-documented, directly related to the litigation, and reasonable. As explained above, Mr. Bennett is

---

[9] The Court notes that Plaintiff only submitted billing records for Ms. Rotkis, Mr. Bennett, and CCM. See generally Billing Records at 17-24. No billing records were submitted for the work alleged to have been done by Ms. Ward.

[10] As the Court concluded above, because the terms of the Offer of Judgment explicitly exclude attorney's fees subsequent to the date of the Offer of Judgment, Plaintiff is not entitled to the hours spent in preparation of the attorney's fees petition.

the co-founding partner of the Consumer Litigation Associates law firm, and is a specialist in consumer protection law. Pittman Decl. ¶ 24. His involvement in the instant case was supervisory, with only 8.3 hours billed. Having reviewed the billing entries for Mr. Bennett, the Court finds such hours to be reasonably spent.

## ii. Ms. Rotkis

In analyzing the time and labor expended according to Johnson factor one, the majority of Ms. Rotkis's billed hours appear well-documented, directly related to the litigation, and reasonable. However, some billing entries do not provide sufficient detail for the Court to determine that the time and labor expended were reasonable because the billing records contained redacted information or constitute block entries. While such entries might be sufficient on a client bill where the client is familiar with the progress of the work, it is not sufficient for an attorney's fees request such as this.

## (A) Redacted Entries

Because the burden of demonstrating what hours are reasonable rests upon the fee applicant, "the court is entitled to expect that the applicant's time records will provide some guidance in identifying the recoverable hours." Buffington v. Baltimore Cty., Md., 913 F.2d 113, 128 (4th Cir. 1990) (citing Hensley, 461 U.S. at 437). "Parties are generally entitled to

assert privilege and redact records in connection with motions for fees but they are not thereby relieved of the burden of proving the reasonableness of the fees." See Bank of N.Y. Mellon v. Bell, No. 3:11CV1255, 2015 WL 778668, at *2 (D. Conn. 2015). A partial redaction of billing records does not prevent a court from granting fees on the basis of the redacted records unless the "records supporting the motion have been 'so thoroughly redacted that the Court [can]not reasonably review them.'" Id. (quoting Home Funding Group, LLC v. Kochmann, 2008 WL 4298325, at *6 n.7 (D. Conn. 2008)). Without predicting how the Court would have ruled on a request that it conduct an in camera review of the redacted billing records, the Court notes that no such request was made here. See AIG Annuity Ins. Co. v. Law Offices of Theodore Coates, P.C., No. CIVA07CV01908-MSKMJW, 2009 WL 728462, at *1 (D. Colo. 2009) (evaluating a request for the court to review attorney billing records in camera).

In Plaintiff's submitted billing records, nine entries contain redacted information:

### Hours With Redacted Descriptions

| Date | Description | Requested Hours |
|---|---|---|
| 10/23/2015 | from PC ████████ nts) | 1.5 |
| 10/24/2015 | tel con w/PC and wife, ████████ | 1.8 |

38

| | | |
|---|---|---|
| 10/28/2015 | email from PC, ████████ | 0.5 |
| 12/10/2015 | docs from PNMC date 12/8 (2 letters) "missing essential information"; provided potential response; mortgage statement 11/13/2015 UNREADABLE document production -- impression th████ ██R | 0.5 |
| 12/10/2015 | CRRG mortgage guidelines re: requirements for mortgage servicers (last four CRRGs); Review similar mortgage cases, ████████ ████████ Determine PNMC violations, inaccurate reporting confirmed, C/A under FCRA for accuracy and failure to investigate; No XB | 2.3 |
| 12/11/2015 | MTG LAB and VLW, review C/A, FCRA & RESPA, approved; ████████ | 1.0 |
| 12/11/2015 | mtg front office (Viera) re: file maintenance for FCRA (CRAs & furnisher) (two cases -- keep separate) ████████ | 0.3 |
| 12/18/2015 | PNMC file (review Wells Fargo pmt history, PNMC responses, CRRG requirements for mortgage, all pmts sent to date, txn log, PNMC posts payments ████████ - - research for compl against PNMC is there c/a for setting it up to look late) | 1.3 |
| 1/31/2016 | email from client with docs PNMC more problems w/escrow! Escrow analysis incorrect, to detriment of consumer. ████████ ████████. | 3.5 |
| TOTAL | | 12.7 |

Billing Records at 17-18.

In reviewing the redacted records, the Court finds the following entries "so thoroughly redacted that the Court

39

[can]not reasonably review them"—October 23, 2015, October 24, 2015, October 28, 2015, December 11, 2015, and January 31, 2016. Bell, No. 3:11CV1255, 2015 WL 778668, at *2. Each of these entries is nearly entirely redacted, and thus the Court cannot determine whether the undisclosed actions were reasonable. Page v. Va. State Bd. of Elections, No. 3:13CV678, 2015 WL 11256614, at *10 (E.D. Va. 2015) ("[V]ague or redacted time entries do not permit the Court to weigh the hours claimed and exclude hours that were not 'reasonably expended.'" (quoting Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006))). Therefore, the Court reduces Ms. Rotkis's hours by **8.3 hours** to account for the redacted entries that the Court is unable to evaluate. The remaining redacted entries offer some information regarding counsel's work, but do not identify the amount of time spent on the redacted portion and the amount of time on the other activities listed. Thus, the Court will consider the remaining redacted entries in its' block billing analysis.

### (B) Block Billing

Plaintiff's billing records include "block billing" entries which list multiple activities without delineating the time spent on each activity. Guidry, 442 F. Supp. 2d at 294 ("Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task.").

40

It is the obligation of counsel to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437. Because of the obligation to maintain billing records with sufficient detail that the court may review and determine the reasonableness of individual activities, block billing entries are disfavored in attorney's fees award cases. Faircloth v. Colvin, No. 2:13CV156, 2014 WL 5488809, at *8 (E.D. Va. 2014); see Sky Cable, LLC v. Coley, No. 5:11CV00048, 2014 WL 4407130, at *4 (W.D. Va. 2014) (noting that often "block billing" or "lumping" warrants a reduction of the total fee award). "The traditional remedy for block billing is to reduce the fee by a fixed percentage reduction." Jones v. Southpeak Interactive Corp. of Del., No. 3:12CV443, 2014 WL 2993443, at *9 (E.D. Va. 2014), aff'd, 777 F.3d 658 (4th Cir. 2015).

Plaintiff's billing records contain various block billing entries. For example, on December 28, 2015, counsel requests 1.3 hours for reviewing the "PNMC file" and researching whether there was a cause of action for a complaint, with a redacted activity in the middle of the entry. Billing Records at 18. Because the entry does not attribute times to each activity listed, it is unclear how much time was spent researching for the complaint versus how much time was spent on the redacted activity, which the Court is unable to review for

reasonableness. In another example, on August 26, 2016, Ms. Rotkis billed 3.8 hours for:

> PNMC -- potential automatic exclusion: no acdv from relevant time pd., no policies & procedures, no evidence of investigation at all, no names of any witness (possible Noguiera and Rodgers from CRA disclosures) no evidence of what PNMC reported to CRAs, no record of payments in disputed month, no evidence of read/understanding of statute, no inofrmation [sic] how to read codes, abbreviations, no evidence re QWR Check possible dates for dep notices (if no response to request for dates)

Billing Records at 20. This entry lists counsel's research efforts, a compensable task, together with checking on possible deposition dates, a largely non-compensable clerical task of scheduling. See Butler v. Directsat USA, LLC, No. CA DKC 10-2747, 2016 WL 1077158, at *4 n.3 (D. Md. 2016) ("Purely clerical work includes such tasks as the downloading, printing, and transmitting of documents and work related to scheduling."); Faircloth, No. 2:13CV156, 2014 WL 5488809, at *8 (holding that it was improper to use "block billing" because it commingles compensable work with non-compensable work). Another example of block billing occurred on September 15, 2016:

> minor edits to P.O., correspondence to counsel re: depo dates, differentiate btw 30(b)(6) and 30(b)(1) witnesses, additional time to complete discovery by PNMC; settlement inquiry

Billing Records 20. It appears that during this 1.3 hour entry, counsel edited a document and corresponded with counsel. While both of these types of tasks may be compensable, the listing of

42

multiple tasks in a single billing entry does not allow the Court to determine whether a reasonable amount of time was spent on each activity. See Two Men & A Truck/Int'l, Inc. v. A Mover Inc., 128 F. Supp. 3d 919, 929 (E.D. Va. 2015) ("It would be futile for this Court to attempt to separate these 'block entries into their constituent tasks and apportion[] a random amount of time to each.'" (quoting Abusamhadaneh v. Taylor, No. 1:11CV939, 2013 WL 193778, *21 (E.D. Va. 2013))). Having evaluated Plaintiff's billing records, the Court will exercise its discretion to reduce Ms. Rotkis's hours by **ten percent** due to block billing entries. Project Vote, 887 F. Supp. 2d at 716 (noting that a court may reduce a fee award for block billing "by reducing the overall fee award by a fixed percentage or amount" (quoting Guidry, 442 F. Supp. 2d at 294)); see Lusk v. Virginia Panel Corp., 96 F. Supp. 3d 573, 583 (W.D. Va. 2015) (reducing fee award by five percent to account for counsel's use of block billing).

### iii. Ms. Ward

The Court finds that Plaintiff has not sufficiently submitted documentation to allow the Court to evaluate the reasonableness of Ms. Ward's work. Hensley, 461 U.S. at 437 (requiring counsel to "maintain billing time records in a manner that will enable a reviewing court to identify distinct

claims"). Plaintiff did not submit any billing records for Ms.

Ward, stating only that:

> Vicki Ward is a highly skilled, senior paralegal with over 27 years [of] experience as a paralegal, most of that experience has been dedicated exclusively to consumer protection work. Depending on the task, Ms. Ward tracks her time and we charge an hourly rate of $200 for her work. In this case, she has provided 25 hours of substantive work in drafting and editing the complaint, maintaining and organizing the client's documents; drafting and editing discovery; scheduling and re-scheduling depositions and court reporters; receiving, reviewing and organizing the Defendant's documents and discovery responses; receiving, reviewing and drafting responses to the Defendant's discovery to Plaintiff; communicating with the client.

Rotkis Decl. ¶ 13.

While Ms. Ward undoubtedly assisted Ms. Rotkis in this case, the above description of Ms. Ward's twenty-five hours does not provide the Court with sufficient detail to determine which hours were reasonably spent on this litigation. See Fair Hous. Council of Greater Wash. v. Landow, 999 F.2d 92, 97 (4th Cir. 1993) (requiring that for an award of attorney's fees, applicant "must make every effort to submit time records which specifically allocate the time spent on each claim" and such "records should attempt to specifically describe the work" so that the court may determine the reasonableness of the fee request) (emphasis added); Lusk, 96 F. Supp. 3d at 583 (reducing hours for block billing because it was "impossible to tell how much time was spent on what particular task in order to

determine if the time spent was reasonable"). Moreover, actions such as "maintaining and organizing the client's documents" or "scheduling and re-scheduling depositions and court reporters," constitute "purely clerical" work, which "should not be billed at a paralegal rate, regardless of who performs them." Two Men & A Truck, 128 F. Supp. 3d at 929; see Butler, No. CA DKC 10-2747, 2016 WL 1077158, at *4 n.3 (considering tasks such as scheduling and document management as "purely clerical work"). Therefore, the Court reduces Plaintiff's attorney's fees award by the **25 hours** that Plaintiff requested for Ms. Ward.

### iv. "CCM"

Finally, the Court finds that Plaintiff has not sufficiently submitted documentation to allow the Court to evaluate the reasonableness of worked performed by "CCM." See Hensley, 461 U.S. at 437. While Plaintiff submitted billing records that list work done by CCM, as noted above, it is unclear who CCM is, what qualifications CCM has, and why the work that CCM did was necessary to this litigation. Without any description of CCM, the Court cannot determine that the hours spent by CCM were reasonable. Because the Court must reduce Plaintiff's requested hours where documentation is "inadequate," id. at 434, the Court reduces Plaintiff's attorney's fees award by the **2.2 hours** that Plaintiff requested for CCM.

45

v. Reasonable Hours Summary

Having reviewed Plaintiff's submitted documents and considered Johnson factor one, the time and labor expended, the Court finds that its' obligation to award an attorney's fees only to the extent that it is "reasonable" requires some degree of adjustment to the hours Plaintiff requested. In re A.H. Robins Co., Inc., 86 F.3d 364, 373 (4th Cir. 1996) ("A court abuses its discretion if it allows a fee without carefully considering the factors relevant to fair compensation." (citing Barber, 577 F.2d at 226)). The Court therefore makes the following adjustments to the hours requested in order to eliminate hours that Plaintiff has failed to demonstrate were reasonably billed in this case. See McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.")(internal citations omitted).

Plaintiff submitted eight pages of billing records reflecting counsel's work in this case. See Billing Records 17-24. Having reviewed the billing records[11] and supporting

_____

[11] The Court notes that Plaintiff's billing records contain mathematical errors. For example, billing records indicate that, on November 10, 2016, Ms. Rotkis spent 1.3 hours planning for a settlement conference, billing at an hourly rate of $475. Billing Records at 21. The billing records list the total for this line entry as $593.75. Id. However, 1.3 hours multiplied by a $475 hourly rate results in a fee of $617.50. Had Ms. Rotkis only billed

46

documentation, the Court finds that Plaintiff has submitted sufficient evidence to demonstrate that a fee award is appropriate as to Mr. Bennett and Ms. Rotkis, but finds that Plaintiff has not submitted sufficient evidence to demonstrate that any fee award is appropriate for Ms. Ward or for CCM. However, the Court finds that, as explained above, despite the fact that the billing records are generally thorough and detailed, Plaintiff has failed to demonstrate that all of Ms. Rotkis's claimed hours are "reasonable" due to redacted entries and block billing entries. Hensley, 461 U.S. at 434. Therefore, the Court reduces Ms. Rotkis's hours by **8.3 hours** to account for the redacted entries that the Court is unable to evaluate and further reduces Ms. Rotkis's remaining hours by **ten percent** to account for block billing entries. Accordingly, the Court recognizes the following hours as reasonably spent by Plaintiff in this litigation:

1.25 hours, the total line entry of $593.75 would be accurate. This is one example of fourteen such errors contained on a single page of the submitted billing records. Id. The Court observes that, with respect to each of these referenced entries, the mathematical discrepancy represents a 0.05 hour increase in each entry as to the number of hours requested. It is unclear to the Court what caused these mathematical errors. Therefore, while the Court used the hours listed, and makes no adjustments to the requested attorney's fees on this basis, this discrepancy further supports the Court's determination above to reduce Ms. Rotkis's hours for block billing.

| NAME | HOURS | | |
|---|---|---|---|
| | LITIGATION | FEE PETITION | TOTAL HOURS |
| Susan Rotkis | 121 | 0 | 121 |
| Len Bennett | 8.3 | 0 | 8.3 |
| CCM | 0 | 0 | 0 |
| Vicki Ward (paralegal) | 0 | 0 | 0 |

### c. Lodestar Summary

Based upon the reasonable hours and reasonable rate analysis outlined above, the following table reflects the Court's lodestar calculation, which is the beginning point for an attorney's fees award prior to any adjustments in step two or three of the required analysis.

| NAME | HOURS AWARDED | RATE AWARDED | TOTAL |
|---|---|---|---|
| Susan Rotkis | 121 | $ 425 | $ 51,425.00 |
| Len Bennett | 8.3 | $ 575 | $ 4,772.50 |
| CCM | 0 | $ 0 | $ 0.00 |
| Vicki Ward (paralegal) | 0 | $ 155 | $ 0.00 |
| TOTAL Lodestar Figure | | | $ 56,197.50 |

### 2. Adjustment for Unsuccessful Unrelated Claims

After a lodestar figure is calculated, the Court must determine whether the fee award should be reduced to reflect the time counsel spent on unsuccessful claims that are unrelated to the successful claims. Robinson, 560 F.3d at 244. "Where the plaintiff's claims are based on different facts and legal

48

theories, and the plaintiff has prevailed on only some of those claims, . . . these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989). However, when a plaintiff prevails on some issues but not others and the claims arise "out of a common core of facts, and involve related legal theories," a district court may exercise its discretion to arrive at a reasonable fee award, "either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." Id. at 789-90.

Here, while Defendant argues that the Court should reduce the lodestar figure because Plaintiff "settled for a sum ($5,000) that was far less than the amount he sought," Defendant does not argue that Plaintiff was unsuccessful on either claim against Defendant. Def.'s Resp. Br. 6. Plaintiff alleged two specific claims against Defendant: Count Six-violation of 15 U.S.C. § 1681s-2(b)(1)(A) "by failing to fully and properly investigate" Plaintiff's disputes regarding the inaccurate reporting of his mortgage payment, id. ¶ 70, and Count Seven—violation of 15 U.S.C. § 1681s-2(b)(1)(B) "by failing to review all relevant information provided by the consumer reporting agencies," id. ¶ 91. Pursuant to the Offer of Judgment,

49

Defendant allowed "judgment to be taken against it in this action as to all claims asserted against it by Plaintiff." Offer of J. (emphasis added). Thus, because Plaintiff was successful on both claims asserted against Defendant, the Court makes no adjustment to the lodestar figure at this stage of analysis and moves on to considering Plaintiff's degree of overall success.

### 3. Adjustment for Degree of Success

The final step in determining a reasonable fee award is adjusting the lodestar figure to take into account the "'degree of success enjoyed by the plaintiff'" on his successful claims. Grissom, 549 F.3d at 321 (quoting Johnson, 278 F.3d at 337). The "most critical factor" in evaluating the reasonableness of a fee award "is the degree of success obtained." Hensley, 461 U.S. at 436; see also Farrar v. Hobby, 506 U.S. 103, 114 (1992) (internal quotation marks omitted) ("[T]he degree of the plaintiff's overall success goes to the reasonableness of a fee award."). When a plaintiff achieves only "partial or limited success," the lodestar figure may be excessive notwithstanding the fact that all claims were "interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. In determining Plaintiff's degree of success, the Court considers Johnson factor eight: the "amount in controversy and the results

obtained."[12] McAfee, 738 F.3d at 89. "[W]hen considering the extent of the relief obtained, [the court] must compare the amount of damages sought to the amount awarded." Id. at 92–93 (quoting Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005)). Finally, while the Court must consider Plaintiff's degree of success, an attorney's fees award is not required to be directly proportional to the amount of damages that the client recovered in the legal action. Croy v. E. Hall & Assocs., P.L.L.C., No. 5:06CV00107, 2007 WL 676698, at *3 (W.D. Va. 2007) ("Courts have repeatedly held that proportionality between a consumer's recovery and the attorney's fees to be paid is not required in every action brought under the Consumer Credit Protection Act statutes such as the Fair Credit Reporting Act.").

Defendant argues that "the Court should reduce the lodestar because [Plaintiff] settled for a sum ($5,000) that was far less than the amount he sought." Def.'s Resp. Br. 6. According to Defendant, Plaintiff is entitled to "not more than $5,000," which is an amount that is "consistent with the ratio of the damages [Plaintiff] obtained in this case ($5,000) to the damages [Plaintiff] sought throughout this case ($120,000)," id.

[12] The Court notes that the consideration of Plaintiff's degree of success was not subsumed within the prior analysis determining the lodestar figure, but is considered in the adjustment to the lodestar figure. See McAfee, 738 F.3d at 89-90.

at 16. While Plaintiff did not demand a specific dollar amount in his complaint, Plaintiff requested relief in the form of actual damages, statutory damages, punitive damages, costs and attorney's fees, specific performance and injunctive relief, and "such other relief the Court deems just and proper." Compl. ¶ 99. Plaintiff initially indicated that he would be willing to settle the case for $120,000,[13] and on November 10, 2016, Defendant responded with a $5,000 counteroffer of settlement. Emails Between Counsel at 15. Plaintiff's counsel responded by reducing Plaintiff's settlement demand from $120,000 to $119,000, but explaining that "[w]e will not counter a response that is outside of a reasonable settlement range." Id. Three weeks later, Plaintiff accepted Defendant's Offer of Judgment for $5,000. Not. of Acceptance of R. 68 Offer of J. Thus, Plaintiff's financial recovery is a little more than four percent of his initial settlement demand. In response to Defendant's proportionality argument, Plaintiff argues that he "enjoyed complete success in this case" because he prevailed on both of his legal claims and further argues that attorney's fees are not required to be proportional to the amount Plaintiff recovered, especially in a consumer protection case such as

---

[13] See McAfee, 738 F.3d at 90 ("[A] district court 'has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so.'" (quoting Thomas v. Nat'l Football League Players Ass'n, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001))).

this. Pl.'s Opening Br. 11-12.

In evaluating Johnson factor eight, the "amount in controversy and the results obtained," McAfee, 738 F.3d at 89, the Court considers that while Plaintiff is a successful party under FCRA in that he achieved complete legal vindication on both of his claims against Defendant via the Offer of Judgment, Plaintiff's monetary recovery is only a small fraction (just over four percent) of his initial settlement demand. Nevertheless, the Court notes that this was a consumer protection case, and therefore an attorney's fees award that is directly proportional to the amount of recovery (nearly four percent) would not be appropriate because in cases "such as this, where the monetary value of the case is typically low, requiring direct proportionality for attorneys fees would discourage vigorous enforcement of consumer protection statutes." Croy, No. 5:06CV00107, 2007 WL 676698, at *3.

The Court nevertheless considers that Plaintiff cursorily rejected Defendant's $5,000 settlement offer of November 10, 2016, and subsequently incurred an additional $23,303.50 in legal fees before ultimately accepting Defendant's $5,000 Offer of Judgment on November 30, 2016. See Emails Between Counsel (rejecting Defendant's $5,000 settlement offer seven minutes after receiving the email); 2d Rotkis Decl. ¶¶ 2-3. Thus, while the Court views with some skepticism Defendant's request that

Plaintiff be awarded less than $5,000 in attorney's fees based upon Plaintiff's degree of success between the amount of damages sought and the amount of damages obtained, some amount of reduction in the lodestar figure is required, though not to extent that Defendant requested.

Considering all of the above, the Court concludes that a **40% reduction in attorney's fees** is appropriate in this case to reflect Plaintiff's tangible victory by succeeding on the merits of both of his claims through the accepted Offer of Judgment, while also taking into account the minimal financial award that Plaintiff accepted in light of his initial settlement demand. Hensley, 461 U.S. at 436-37 (noting that "[t]here is no precise rule or formula" for reducing a fee award for a lack of success but the court "may simply reduce the award"). The total attorney's fees award in this case is therefore reduced from **$56,197.50 to $33,718.50.**

## C. Costs

In addition to reasonable attorney's fees, Plaintiff also requests that the Court award his costs pursuant to the Offer of Judgment. Mot. for Award of Att'y Fees & Costs 1. In support of this award of costs, Plaintiff produced counsel's billing records for "expenses":

| Date | EE | Activity | Description | Cost | Qty. | Line Total |
|------|-----|----------|-------------|------|------|------------|
| 05/02/2016 | SR | Filing Fee | | 400.00 | 1.0 | 400.00 |
| 11/29/2016 | SR | Federal Express | | 65.86 | 1.0 | 65.86 |
| 11/30/2016 | SR | Depos | Maxene Weinberg (Depositions of Noguiera, Clark, court reporter & videoconference 10/18/2016; 1/30/2016) | 3,232.28 | 1.0 | 3,232.28 |

Expense Total: **$3,698.14**

Billing Records at 22. In her declaration, Ms. Rotkis stated that "[b]ecause there were four defendants, [Defendant] should only be responsible for one quarter of the filing fee, or $100," reducing the total cost attributable to Defendant to $3,398.14. Rotkis Decl. ¶ 45. Plaintiff did not attach any invoices or receipts for these expenses to Plaintiff's request for costs.

Pursuant to a Rule 68 Offer of Judgment, a defendant may "serve on an opposing party an offer to allow judgment on specified terms, with the <u>costs then accrued</u>." Fed. R. Civ. P. 68(a) (emphasis added). In order for the Court to tax costs against the Defendant, Local Rule 54(D) states:

> The party entitled to costs shall <u>file a bill of costs</u> as provided in 28 U.S.C. §§ 1920 and 1924 within eleven (11) days from the entry of judgment, unless such time is extended by order of the Court. Such bill of costs shall distinctly set forth each item thereof so that the nature of the charge can be readily understood. An itemization and documentation for requested costs in all categories shall be attached to the cost bill. <u>Costs will be disallowed if proper documentation is not provided.</u>

E.D. Va. Loc. Civ. R. 54(D) (emphasis added). "[T]he law is clear that no litigation costs should be awarded in the absence of adequate documentation." Trimper, 58 F.3d at 77 (affirming a district court's holding that "an unverified 'Chart of Expenses,' with no receipts or bills attached" was insufficient documentation to award costs); Fernandes v. Montgomery Cty., No. CIV. SAG10752, 2013 WL 6330705, at *7 (D. Md. 2013) (holding that merely listing litigation expenses in billing records, "[w]ith no supporting documentation, such as vouchers, or receipts," is insufficient documentation to allow a court to verify that the amounts are accurate and reasonable).

Here, as part of Plaintiff's initial filing of his case, he submitted his receipt for $400.00 for the "civil filing fee." See Compl. Ex. 3, Filing Fee Receipt, ECF No. 1-3. Therefore, the Court finds that there is adequate documentation of payment of the filing fee, and pursuant to Plaintiff's statement that Defendant is attributable with one quarter of the filing fee, the Court **AWARDS** costs for the filing fee in the amount of $100.00. As to Plaintiff's remaining requests for costs, because Plaintiff has not provided invoices or receipts for these expenses, the Court is unable to determine if the expenses are taxable as costs. Trimper, 58 F.3d at 77. Therefore, in accordance with Local Rule 54(D) directing that costs be disallowed if proper documentation is not provided, E.D. Va.

Loc. Civ. R. 54(D), the Court **DENIES** all of Plaintiff's remaining requests for costs.

## IV. Conclusion

As explained above, the Court has performed the required "lodestar analysis," has considered all of the Johnson factors, Barber, 577 F.2d at 226 n.28, has adjusted the lodestar figure to reflect the "degree of success achieved" by Plaintiff, Hensley, 461 U.S. at 436, and has evaluated the costs requested. After making a downward adjustment to the hourly rates and the total hours requested by Plaintiff, and adjusting for Plaintiff's overall degree of success, the Court **GRANTS** Plaintiff's motion for attorney's fees and costs, and hereby **AWARDS** attorney's fees to Plaintiff in the amount of **$33,718.50,** and **AWARDS** costs to Plaintiff in the amount of **$100.00**, but **DENIES** all other requested costs. ECF No. 43. Finally, the Court **DISMISSES as MOOT** Plaintiff's motion for leave to file supplemental authority. ECF No. 56.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May  12  , 2017

57